[Cite as *State v. Lewis*, 2017-Ohio-461.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 104283**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## NNE LEWIS

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-10-533055-A

**BEFORE:** Laster Mays, J., E.T. Gallagher, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** February 9, 2017

**ATTORNEY FOR APPELLANT**

W. Scott Ramsey
55 Public Square, Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:   Mary McGrath
Brent Kirvel
Assistant County Prosecutors
Justice Center, 8th Floor
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

{¶1} Defendant-appellant Nne Lewis ("Lewis") appeals the trial court's denial of his motion for a new trial, arguing that in spite of the presence of clear and convincing evidence, the trial court erroneously determined that Lewis was competent to stand trial at the time of his 2010 murder conviction. After a review of the record, we affirm.

## I.     BACKGROUND AND FACTS

{¶2} Lewis was indicted in 2010 for the shooting death of his cousin. On September 23, 2010, a jury found Lewis guilty of murder, R.C. 2903.02(A), with one- and three-year firearm specifications. Lewis was sentenced on October 26, 2010, to three years incarceration for the firearm specification, to be served consecutive to his sentence of 15 years to life for the murder conviction, and five years of postrelease control. Lewis's conviction was affirmed by this court, and the Ohio Supreme Court disallowed a discretionary appeal.[1]

{¶3} Lewis argues that he suffers from mental illness. Lewis was arrested and incarcerated in January 2010. On February 24, 2010, several months before his trial, Lewis was referred to the court psychiatric clinic to ascertain his fitness to stand trial under R.C. 2945.37. On March 23, 2010, psychiatrist Dr. Cathleen Cerny ("Dr. Cerny") diagnosed Lewis with marijuana dependence, malingering cognitive deficits (feigning or exaggerating symptoms), and an unspecified mood disorder. On March 26, 2010, due to

---

[1] *State v. Lewis*, 8th Dist. Cuyahoga No. 95964, 2011-Ohio-6155, *appeal not accepted,* 131 Ohio St.3d 1486, 2012-Ohio-1143, 963 N.E.2d 825.

Lewis's reported lack of cooperation with Dr. Cerny's evaluation, the trial court referred Lewis for a 20-day inpatient examination at Northcoast Behavioral Health Systems ("Northcoast"). On April 19, 2010, Dr. Philip Saragoza ("Dr. Saragoza") of Northcoast issued a report diagnosing Lewis with cannabis dependence, and major depressive disorder, single episode, possibly related to his incarceration.

{¶4} On May 6, 2010, Lewis's counsel or the parties stipulated to the psychology report. The trial court found Lewis competent to stand trial. Trial was scheduled for July 12, 2010. On July 8, 2010, the trial was continued at Lewis's request. Defense counsel expressed concern about Lewis's mental health and Lewis was referred to the court psychiatric clinic. Dr. Stephen Noffsinger ("Dr. Noffsinger") of the psychiatric clinic determined that Lewis was cannabis dependent, malingering and competent to stand trial. On August 25, 2010, Lewis's counsel or the parties stipulated to the psychiatric report, and the trial court determined that Lewis was competent to stand trial.

{¶5} On August 18, 2010, Lewis was indicted for assaulting two corrections officers while his murder trial was pending. *State v. Lewis*, Cuyahoga C.P. No. CR-10-540960-A. In November 2010, after sentencing in the murder case, and while awaiting proceedings in the assault case, Lewis was again referred for a competency examination due to experiencing "strange episodes" while in county jail. Dr. Noffsinger issued a December 20, 2010 report finding that Lewis was competent.

{¶6} At defense counsel's request, the trial court also allowed Dr. Katie Connell ("Dr. Connell"), an independent psychiatrist, to conduct an evaluation. Dr. Connell also

opined that Lewis was malingering and there was no evidence of major mental illness or defect. At the March 7, 2011 competency hearing, the trial court determined that Lewis was competent to stand trial.

{¶7} At the April 2011 pretrial for the assault case, Lewis was offered a plea agreement, reducing the charge of assaulting corrections officers, R.C. 2903.13(A), to misdemeanor assault. Lewis told his counsel he was going to plead guilty; however, when presented to the court, Lewis repeatedly said he was not guilty. A Crim.R. 29 motion for judgment of acquittal was granted as to one correction officer, and on April 28, 2011, a jury declared that Lewis was not guilty of assaulting the remaining officer. Lewis's sentence in his murder case was then ordered into execution.

{¶8} According to an August 8, 2011 prison mental health referral form, Lewis was making threats of harm on the transport bus from Lorain Correctional Facility to the Mansfield Reformatory. Lewis had a strong body odor due to refusal to shower, and spoke incoherently or not at all. The form also stated, "[O]ver the course of his incarceration, Lewis has been seen as normal at times [and] odd at times. He was placed on watch at Lorain [Correctional Facility] on July 13, 2011." The request was made to evaluate Lewis for antipsychotic medication.

{¶9} The November 9, 2011 prison mental health referral form documents a conversation between a prison psychiatrist and Lewis's mother. His mother stated that in 2008-2009, Lewis was diagnosed as schizophrenic by Kaiser Healthcare ("Kaiser"). The prison decided to medicate Lewis.

{¶10}   Lewis's prison file includes an involuntary medication request form, that contains a brief history:

(1)    Lewis "has been diagnosed with a serious medical illness";

(2)    Lewis murdered his cousin because Lewis falsely believed the cousin was sleeping with Lewis's girlfriend;

(3)    Lewis allegedly assaulted two corrections officers and attempted to hang himself at the county jail, and was treated with Celexa for depression;

(4)    During transport to Mansfield Reformatory, Lewis threatened to harm other inmates if placed in the general population;

(5)    Lewis refuses to wash, exhibits periodic muteness and other behaviors upon arrival at Mansfield;

(6)    There was no diagnosis made from April to November 2011, "at which point he was sent to CRC with a diagnosis of R/O Schizophrenia CUT, R/O Schizoaffective Disorder";

(7)    Lewis rarely speaks, stands in his cell for hours wearing a dirty blanket and the odor from his cell is appreciable in the hallway; and

(8)    Lewis refuses to shower or accept medication but accepts food and water.

{¶11}   In light of the November 2011 diagnosis, Lewis's  family hired Philip P. Dines, M.D., Ph.D. ("Dr. Dines"), affiliated with University Hospitals in Cleveland, with expertise in neuropsychiatry, psychosis, and cognitive disorders, to determine whether Lewis was, in fact, competent at the time of his murder trial.   Dr. Dines did not examine Lewis, but did review:  (1) the 2010 court psychiatrist reports from Drs. Saragoza and Cerny; (2) six involuntary medical decision reports issued by the Ohio Department of Corrections between December 2011 and June 2013; and (3) prison interdisciplinary

notes from 2011 to 2014. Dr. Dines was hired in 2014, and he issued his report in December 2014, three years after Lewis's diagnosis.

{¶12} Dr. Dines's report recites alcohol and cocaine consumption by Lewis's mother during pregnancy, the schizophrenia diagnosis the mother states was issued in 2008, Lewis's habitual use of cannabis, his history of behavioral issues, and Dr. Dines's review of the psychiatric records. Dr. Dines concluded that "it is more likely than not that [Lewis] was not competent to stand trial" in 2010.

{¶13} In January 2015, Lewis filed a motion for a new trial pursuant to Crim.R. 33(A)(5), asserting that an error of law occurred at the murder trial. Lewis argued that the trial court improperly found him competent to stand trial in 2010. Dr. Dines's report was offered in support of Lewis's position.

{¶14} Hearings on the motion were held on October 28, 2015 and November 20, 2015. Dr. Dines's testimony elaborated on his report. Dr. Dines confirmed that he never examined Lewis, and that he had not been privy to a number of the reports introduced by the state in support of their opposition to Lewis's motion.

{¶15} Dr. Dines did not recall reading in the prison medical records that Lewis was asymptomatic during his six months at Lorain Correctional Facility after his conviction. Several of the prison medical records also indicated that Lewis could be malingering. Dr. Dines admitted that it is possible that Lewis's conduct was malingering; however, he also explained that schizophrenia manifests at different times, in various ways, with an onset of symptoms in the late teens to early 20s.

**{¶16}** Dr. Noffsinger, supervisor of the court psychiatric clinic, testified for the state. Dr. Noffsinger was the clinic supervisor at the time Dr. Saragoza issued his report and also met with Lewis twice. He authored the August 3, 2010 competency report in the murder case, and a December 20, 2010 competency report in the assault case. Dr. Noffsinger also issued a October 15, 2015 report in support of the state's opposition to the motion for a new trial. In addition to meeting with Lewis, Dr. Noffsinger reviewed medical records from Cleveland Clinic, the county jail medical records, police records, and the competency evaluation reports submitted by the other doctors.

**{¶17}** Dr. Noffsinger testified that Lewis confirmed that he exaggerated his symptoms during his meeting with Dr. Cerny. He noted that the prison records contained a reference to hospitalization at Kaiser, but corroborating evidence was not produced by Lewis. Lewis told Drs. Noffsinger and Cerny that he had never been hospitalized for psychiatric problems.

**{¶18}** Dr. Noffsinger also reviewed the January 2011 report of independent psychiatrist Dr. Connell, diagnosing Lewis as a malingerer. An April 28, 2011 prison medical record issued by psychologist Dr. Paul Yavornitsky concluded that Lewis was feigning mental illness as well as an alleged suicide attempt. The prison records reflected that Lewis began receiving psychotic and mood stabilizing medications in late 2011.

**{¶19}** After a full hearing, the trial court denied the motion for a new trial, concluding, in relevant part:

A defendant will be granted leave to file a delayed motion for new trial based on newly-discovered evidence only if he has "demonstrate[d] by clear and convincing evidence that he was unavoidably prevented from discovering the new evidence within the time period provided by Crim.R. 33(B)." *State v. Sawyer*, 8th Dist. Cuyahoga No. 25911, 2005-Ohio-6486, ¶ 11. "The standard of 'clear and convincing evidence' is defined as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State v. Gray*, 8th Dist. Cuyahoga No. 92646, 2010-Ohio-11, ¶ 18.

Here, Lewis has failed to demonstrate by clear and convincing evidence that he was unavoidably prevented from discovering Dr. Dines's opinion within the 120-day time period prescribed by the Crim.R. 33. Had Dr. Dines been privy to all the pertinent data within the time period, he would have been familiar with the pretrial competency reports and two sanity evaluations post-trial.

Furthermore, defendant's motion for a new trial fails on its merits. A motion for a new trial based on newly discovered evidence will only be granted if the defendant shows:

[T]hat the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. *State v. Smith*, 8th Dist. Cuyahoga No. 100588, 2014-Ohio-4799, ¶ 10.

Because of Dr. Dines's opinion being based on a "more likely than not" standard as opposed to a "reasonable degree of medical certainty" standard, his lack of all prior evaluations, and lack of personal evaluation, the court denies the appellant's motion for a new trial on its merits.

## II. ASSIGNMENT OF ERROR

**{¶20}** Lewis's single assignment of error is that the trial court improperly denied his motion for a new trial based upon clear and convincing evidence. The error is comprised of two subparts: (1) the trial court failed to comport with the requirements of Crim.R. 33(A)(5) and R.C. 2945.37; and (2) the trial court erroneously concluded that Lewis was not "unavoidably prevented" from discovering his schizoaffective illness, pursuant to Civ.R. 33. Lewis argues that he was not competent to stand trial in 2010 and, as a result, his due process rights have been violated. We disagree.

### A. Standard of Review

**{¶21}** A Crim.R. 33 motion for a new trial is addressed to the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Smith*, 8th Dist. Cuyahoga No. 100588, 2014-Ohio-4799, ¶ 8, citing *State v. Schiebel*, 55 Ohio St.3d 71, 77, 564 N.E.2d 54 (1990). "An abuse of discretion implies the trial court's attitude was unreasonable, arbitrary, or unconscionable." *Id.*, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1993).

### B. Law and Analysis

**{¶22}** Crim.R. 33 provides in pertinent part:

(A) Grounds. A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:

\*       \*       \*

(5)  Error of law occurring at the trial;

\*       \*       \*

(B) Motion for new trial; Form, Time. Application for a new trial shall be made by motion which, except for the cause of newly discovered evidence, shall be filed within fourteen days after the verdict was rendered, or the decision of the court where a trial by jury has been waived, unless it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from filing his motion for a new trial, in which case the motion shall be filed within seven days from the order of the court finding that the defendant was *unavoidably prevented* from filing such motion within the time provided herein.

Motions for new trial on account of newly discovered evidence shall be filed within one hundred twenty days after the day upon which the verdict was rendered, or the decision of the court where trial by jury has been waived. If it is made to appear by clear and convincing proof that the defendant was unavoidably prevented from the discovery of the evidence upon which he must rely, such motion shall be filed within seven days from an order of the court finding that he was *unavoidably prevented* from discovering the evidence within the one hundred twenty day period.

(Emphasis added.)

**{¶23}** A motion for new trial based on newly discovered evidence, must demonstrate:

[T]hat the new evidence (1) discloses a strong probability that it will change the result if a new trial is granted, (2) has been discovered since the trial, (3) is such as could not in the exercise of due diligence have been discovered before the trial, (4) is material to the issues, (5) is not merely cumulative to former evidence, and (6) does not merely impeach or contradict the former evidence. *State v. Petro*, 148 Ohio St. 505, 76 N.E.2d 370 (1947), at syllabus.

*State v. Barnes,* 8th Dist. Cuyahoga No. 95557, 2011-Ohio-2917, ¶ 23.

**{¶24}** The trial court determined that Lewis failed to demonstrate that he was unable to discover evidence supporting his schizophrenia prior to the 2014 report of Dr. Dines. Counsel expressed concern about Lewis's competency twice prior to the murder

trial. Lewis received a court-administered and an independent psychiatric examination. Each doctor determined that Lewis was feigning mental illness, and competent for trial. While Lewis's mother reported that Lewis was diagnosed with schizophrenia by Kaiser in 2008-2009, the records were never produced for consideration.

**{¶25}** The record shows that the prison psychiatrist began administering medication to Lewis for psychosis in approximately November 2011. However, Dr. Dines was not hired until 2014, his report was not issued until 2014, and Lewis's motion for a new trial was filed on January 26, 2015. In addition, Dr. Dines admits the limited scope of his review, and that he never interviewed Lewis.

**{¶26}** We do not find that the record in this case contains by clear and convincing evidence that Lewis was unavoidably prevented from the timely filing of a motion for a new trial:

> A party is "unavoidably prevented" from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion and could not have learned of that existence within the time prescribed for filing the motion in the exercise of reasonable diligence. *State v. Berry*, 10th Dist. Franklin No. 06AP-803, 2007-Ohio-2244, ¶ 19, citing *State v. Lee*, 10th Dist. Franklin No. 05AP-229, 2005-Ohio-6374, ¶ 7.

*State v. Brooks,* 8th Dist. Cuyahoga Nos. 97455 and 97509, 2011-Ohio-5877, ¶ 42.

**{¶27}** Lewis also argues that, once the issue of competency was raised, the court was required to hold a hearing. Competency to stand trial is governed by R.C. 2945.37:

> In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the

defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.

{¶28} Lewis's competency was questioned by defense counsel twice before trial. Lewis met with Drs. Cerny and Saragoza in March and April of 2010, and on May 5, 2010, Lewis's counsel or the parties stipulated to the reports finding Lewis competent to stand trial. The second time defense counsel challenged Lewis's competence, Lewis was examined by Dr. Noffsinger and counsel stipulated to competency on August 25, 2010.

{¶29} This court held in *State v. Asadi-Ousley*, 8th Dist. Cuyahoga No. 96668, 2012-Ohio-106, ¶ 10, "that the competency issue is one that can be waived by the parties." "A hearing is not required in all situations, only those where the competency issue is raised and maintained." *Id.* "[W]here a defendant stipulates to competency, a trial court need not hold a hearing pursuant to R.C. 2945.37(B) because a hearing is only needed to introduce evidence rebutting the presumption of competency established in R.C. 2945.37(G)." *Id.*, citing *State v. Smith*, 8th Dist. Cuyahoga No. 95505, 2011-Ohio-2400, ¶ 6.

{¶30} Due to Lewis's counsel's stipulation to both competency findings, the trial court was not required to hold a hearing. *See State v. Jones*, 8th Dist. Cuyahoga No. 103383, 2016-Ohio-3060, ¶ 10. *Id.* In addition, "competency is assumed unless the record indicates otherwise." *Id.* at ¶ 11, citing *State v. Harris*, 8th Dist. Cuyahoga No. 102124, 2015-Ohio-5409; R.C. 2945.37(G).

**{¶31}** We also point out that:

Incompetency is defined in Ohio as the defendant's inability to understand "* * * the nature and objective of the proceedings against him or of presently assisting in his defense." R.C. 2945.37(A). Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel.

*State v. Bock,* 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986).

**{¶32}** Therefore, we find that the trial court did not abuse its discretion in denying Lewis's motion for a new trial. The record supports compliance with Crim.R. 33 and R.C. 2945.37.

**{¶33}** The trial court's judgment is affirmed.

It is, therefore, ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

EILEEN T. GALLAGHER, P.J., and
FRANK D. CELEBREZZE, JR., J., CONCUR