[Cite as *State v. McNeir*, 2018-Ohio-91.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
### No.   105417

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ERIC M. MCNEIR

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-15-600903-B

**BEFORE:**   Boyle, J., Stewart, P.J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:**   January 11, 2018

**ATTORNEY FOR APPELLANT**

John P. Parker
988 East 185th Street
Cleveland, Ohio   44119


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:   Brian Radigan
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

MARY J. BOYLE, J.:

{¶1} Defendant-appellant, Eric M. McNeir, appeals his convictions. On appeal, he raises two assignments of error:

> 1. The guilty pleas were not voluntarily made and the Court's extensive colloquy/comments were coercive when considered as a whole and McNeir's rights under *Boykin v. Alabama*, 395 U.S. 238 (1969) were violated.

> 2. The trial court violated Due Process and ORC 2945.37(B) by failing to hold a competency hearing before accepting McNeir's guilty pleas.

{¶2} Finding no merit to either of McNeir's assignments of error, we affirm.

## I. Procedural History and Factual Background

{¶3} On November 20, 2015, the Cuyahoga County Grand Jury indicted McNeir with two counts of aggravated murder; one count of murder; one count of attempted murder with a notice of prior conviction and a repeat violent offender specification; two counts of aggravated robbery with a notice of prior conviction and a repeat violent offender specification; seven counts of felonious assault with a notice of prior conviction and a repeat violent offender specification; two counts of tampering with evidence; one count of having weapons while under disability; one count of involuntary manslaughter; and two counts of discharge of firearm on or near prohibited premises. Except for the counts of tampering with evidence, all of the counts carried one- and three-year firearm specifications. McNeir pleaded not guilty to all of the charges.

{¶4} During a pretrial hearing on May 16, 2016, the court inquired as to the status of plea negotiations between the parties. After the state explained that it would

amend the indictment and recommend a sentence of 18 to 22 years in exchange for McNeir's plea of guilty, the trial court engaged in an extensive colloquy with McNeir explaining his options, including the different sentences that he potentially faced under the plea agreement versus at trial.

{¶5} The trial court then asked McNeir a number of preliminary questions concerning his age and comprehension of the proceedings against him. In response to the court's questions, McNeir stated that he did not know his age, what was going on, or who his lawyers were. As a result, the court had a detailed conversation with McNeir and his counsel in an effort to address McNeir's alleged confusion. After McNeir's defense counsel informed the court that they had met with their client several times and that he understood everything they explained to him, the trial court explained to McNeir that his trial was set for the following week. McNeir, however, again expressed confusion. The trial court, in support of its belief that McNeir's confusion was a ruse, set forth his observations of McNeir's slouched, seated position and failure to maintain eye contact on the record. The trial court then recessed and gave defense counsel time to privately speak with McNeir.

{¶6} After the recess, defense counsel for McNeir advised the court that they were "instructed by [their] client to motion the Court for a mental health assessment with regard to competency." The trial court asked McNeir's defense counsel if "there [was] anything in [their] professional dealings with [McNeir] that [they thought was] supportive of that request[,]" to which counsel stated that he would "rather not answer that

question." The court then had a lengthy discussion with McNeir, during which the court stated that it believed McNeir was playing games and not genuinely confused and asked if McNeir had any thoughts or reasons on why a competency evaluation was necessary. After McNeir continued to claim that he was confused and explained that he did not know why he was arrested, his defense counsel again informed the court that McNeir had understood everything discussed in their previous meetings with him. The court then held another recess.

{¶7} Upon returning to the record, the court explained to McNeir that it did not believe that he was genuinely confused. At that point, McNeir expressed an interest in a potential plea bargain and, against his counsel's advice, spoke to the court about his concerns with the state's plea bargain. After addressing McNeir's concerns and explaining that it had no control over what the state offered, the court thoroughly explained to McNeir the trial process, his constitutional rights, and its objective role in the plea negotiation process. Even though McNeir informed the court that he had no questions about the court's explanation, the court adjourned the proceedings for another week, giving McNeir more time to think about the state's offer and his options.

{¶8} On May 23, 2016, McNeir appeared with his counsel and agreed to the state's plea offer, under which McNeir would plead guilty to an amended indictment of one count of involuntary manslaughter with a three-year firearm specification, attempted murder, aggravated robbery, and felonious assault in exchange for a 30-year sentence. During the course of the plea hearing and the court's colloquy, McNeir appropriately

answered all of the court's questions, correctly stating his name and age as well as facts concerning his educational background. The court then explained McNeir's constitutional rights and confirmed that McNeir understood the counts to which he was pleading guilty and the potential sentence he faced.

{¶9} After McNeir pleaded guilty and the court independently found that the plea was made knowingly, intelligently, and voluntarily, the court moved forward with sentencing, at which time the state allowed two members of the victim's family to speak. McNeir did not wish to speak at sentencing and had no questions for the court. The court then sentenced McNeir to a 30-year term of incarceration and a five-year mandatory term of postrelease control, waived his fines, and ordered him to pay court costs.

{¶10} It is from this judgment that McNeir appeals.

## II. Law and Analysis

### A. Voluntariness of McNeir's Guilty Pleas

{¶11} In his first assignment of error, McNeir argues that the trial court coerced him into entering a guilty plea, and as a result, his guilty plea was not voluntary. In response, the state argues that the trial court's statements during the May 16, 2016 hearing were not coercive, but instead were to ensure that McNeir understood the consequences of a guilty plea.

{¶12} "A plea of guilty is more than a confession which admits that the accused did various acts; it is itself a conviction; nothing remains but to give judgment and determine punishment." *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S.Ct.1709, 23

L.Ed.2d 274 (1969). "Out of just consideration for persons accused of crime, courts are careful that a plea of guilty shall not be accepted unless made voluntarily after proper advice and with full understanding of the consequences." *Kercheval v. United States*, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927). In Ohio, Crim.R. 11 ensures that a defendant's guilty plea is made knowingly, intelligently, and voluntarily by requiring trial courts to explain a defendant's constitutional and nonconstitutional rights.

{¶13} A trial court's responsibility when determining the voluntariness of a defendant's plea can be complicated. On the one hand, while a judge's participation in plea negotiations does not render a plea per se involuntary, a trial judge should typically not become involved in plea discussions and, at the very least, must not coerce a defendant into a plea deal. *State v. Byrd*, 63 Ohio St.2d 288, 293-294, 407 N.E.2d 1384 (1980).

> There are a number of valid reasons for keeping the trial judge out of the plea discussions, including the following: (1) judicial participation in the discussion can create the impression in the mind of the defendant that he would not receive a fair trial were he to go to trial before [that] judge; (2) judicial participation in the discussions makes it difficult for the judge objectively to determine the voluntariness of the plea when it is offered; (3) judicial participation to the extent of promising a certain sentence is inconsistent with the theory behind the use of the presentence investigation report; and (4) the risk of not going along with the disposition apparently desired by the judge may seem so great to the defendant that he will be induced to plead guilty even if innocent.

*Id.* at 293, citing Section 3.3(A) of the American Bar Association standards. On the other hand, "it is important that a record be made demonstrating that a defendant is aware of a plea deal if one is presented, which may necessarily involve the participation of the trial judge in placing the plea deal on the record." *State v. Armstrong*, 8th Dist.

Cuyahoga No. 101961, 2015-Ohio-3343, ¶ 18, citing *Missouri v. Frye*, 566 U.S. 134, 132 S.Ct. 1339, 182 L.Ed.2d 379 (2012). Determining whether a court's explanation coerced a defendant's acceptance of a plea offer requires us to carefully scrutinize the voluntariness of the defendant's plea in light of the entire record. *Armstrong* at ¶ 18; *see also Byrd* at 293 and syllabus.

{¶14} McNeir first argues that while the trial judge is encouraged to place a plea deal on the record, the judge's colloquy was so extensive that it became coercive. First, it is important to note that no plea was entered during the May 16, 2016 hearing, and trial was not set to begin that day, lessening the pressure on McNeir to make a decision and making the court's statements less coercive in nature. Further, while the discussion of the plea deal was certainly long, the discussion was not so long and repetitive as to become coercive. *See State v. Green*, 8th Dist. Cuyahoga No. 96966, 2012-Ohio-1941, ¶ 20 ("The transcript reflects that the trial court made the state's formal plea offer part of the record and nothing more."). The record shows that the colloquy was lengthened, not by unduly repetitive statements regarding the plea deal, but by the trial judge's thorough explanations of his responsibilities as a trial judge, clarifications of McNeir's rights, and earnest attempts to address all of McNeir's questions and concerns. Indeed, the abundance of information provided during the colloquy was true and seemingly necessary based on McNeir's uncooperative responses and demeanor.

{¶15} McNeir cites two cases in support of his argument that the trial court's colloquy was coercive: *State v. Gaston*, 8th Dist. Cuyahoga No. 82628, 2003-Ohio-5825,

and *In re Steinmetz*, 2d Dist. Montgomery No. 19254, 2002-Ohio-4685. In *Gaston*, the trial judge involved herself in the plea bargaining process and indicated to the defendant that his willingness to go to trial could reflect a lack of remorse, a factor the court would consider at sentencing. We found that the judge's statements to the defendant "threatened increased punishment if [he] exercised his constitutional right to trial." *Id.* at ¶ 16. Nevertheless, despite finding that the trial court's statements were coercive, we ultimately affirmed the trial court's judgment on res judicata grounds. *Id.* at ¶ 21.

{¶16} In *Steinmetz*, during plea negotiations, the juvenile court magistrate told the juvenile that if he went to trial, he would make the juvenile's sentences consecutive instead of concurrent. The magistrate then stated, "I'm not trying to force you one way or the other, son, I'm just telling you, * * * if you're wasting the court's time and everybody's time that's what I'm going to do if you're found guilty." *Steinmetz* at ¶ 25. On review, the Second District stated, "It is easy to imagine a seventeen-year-old interpreting the magistrate's remarks as indicating that going to trial would not only be futile but also a choice which he would be punished for exercising." *Id.* at ¶ 30. As a result, the court found the exchange to be coercive.

{¶17} We find both of the cases McNeir relies upon to be distinguishable and find another one of our cases, *State v. White*, 8th Dist. Cuyahoga No. 104224, 2017-Ohio-287, to be more analogous. In that case, the defendant argued that the trial court coerced him into pleading guilty when it compared his case to another defendant's similar case that ended in a guilty verdict. After making the comparison, the trial judge discussed the

drastically different sentences the defendant would face if he pleaded guilty versus going to trial. After its discussion, the trial court gave the defendant time to consider his options and speak with his attorneys. We found no evidence of coercion as the trial court "merely referenced a concrete example of the potential penalties [the defendant] faced if unsuccessful at trial" and gave the defendant time to confer with his attorney and weigh his options. *Id.* at ¶ 13.

**{¶18}** The trial judge's conduct is starkly different than that in *Gaston* and *Steinmetz*, where the judges unmistakably threatened to punish the defendants if they exercised their right to trial. Here, like *White*, the trial judge in the instant case explained the vastly different punishments that McNeir would have faced if he had gone forward with the trial. The trial judge emphasized on numerous occasions that he had no objection to going forward with trial and did not threaten McNeir with increased punishment if he chose to go to trial. The record is replete with statements by the trial judge explaining that he was required to set forth the state's plea offer and potential penalties, indicating that he did not care if McNeir chose to go forward with a trial, and ensuring McNeir that none of what he was saying was intended to be a threat.

**{¶19}** In addition, like *White*, the trial court gave McNeir numerous opportunities to privately speak with his attorneys and even adjourned the proceedings for a week's time so that McNeir could consider the state's proposed plea deal, fire his attorneys, or take other action he believed was necessary. McNeir did not accept and enter into a plea during the May 16, 2016 hearing, and trial was not set to begin that day,

making the trial judge's comments less coercive or threatening. Finally, McNeir only challenges the court's actions and statements during the May 16 hearing, not the plea hearing on May 23. Therefore, we find that the trial judge's statements were not coercive and that McNeir fully understood his constitutional rights, was not threatened or coerced, and knowingly, intelligently, and voluntarily entered into a guilty plea.

{¶20} Accordingly, McNeir's first assignment of error is overruled.

**B. Competency Hearing**

{¶21} In his second assignment of error, McNeir argues that the trial court's failure to hold a competency hearing prior to accepting his guilty plea violated his due process rights as well as R.C. 2945.37(B). The state argues the trial court's discussion with McNeir constituted a competency hearing, and in the alternative, a competency hearing was not required because McNeir waived the right to a hearing by pleading guilty.

{¶22} "Fundamental principles of due process require that a criminal defendant who is legally incompetent shall not be subjected to trial." *State v. Berry*, 72 Ohio St.3d 354, 359, 650 N.E.2d 433 (1995). "The competency standard for pleading guilty is the same as competency to stand trial." *In re K.A.*, 8th Dist. Cuyahoga No. 104938, 2017-Ohio-6979, ¶ 11, citing *State v. Bolin*, 128 Ohio App.3d 58, 713 N.E.2d 1092 (8th Dist.1998). As such, an incompetent defendant may not agree to and enter a guilty plea. *State v. Cruz*, 8th Dist. Cuyahoga No. 93403, 2010-Ohio-3717, ¶ 17.

{¶23} A defendant is presumed to be competent and has the burden of proving his

incompetency by a preponderance of the evidence. *State v. Williams*, 23 Ohio St.3d 16, 28, 490 N.E.2d 906 (1986). A defendant is incompetent if he "is incapable of understanding the nature and objective of the proceedings against [him] or of assisting in [his] defense." R.C. 2945.37(G).

**{¶24}** Trial courts must hold competency hearings when the issue is raised. R.C. 2945.37. Typically, the failure to hold a competency hearing before accepting a defendant's guilty plea is reversible error. *In re K.A.* at ¶ 11. Nevertheless, when the record does not contain "sufficient indicia of incompetence," a trial court's failure to hold a competency hearing before trial is harmless error. *Berry* at 359; *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986).

**{¶25}** After a review of the record and addressing the state's argument in the alternative first, we find that McNeir did not waive his right to a competency evaluation by pleading guilty. The state's position, which argues that a defendant's guilty plea waives a defendant's right to a competency evaluation, directly undermines the requirement that a defendant knowingly, intelligently, and voluntarily enter into a guilty plea. We have reviewed, and even sustained, defendants' assignments of errors concerning trial courts' failure to hold a competency hearing before the defendants accepted guilty pleas. *State v. Miller*, 8th Dist. Cuyahoga No. 104721, 2017-Ohio-7091, ¶ 12 (reversing for failure to hold hearing despite defendant's guilty plea); *State v. Jirousek*, 8th Dist. Cuyahoga No. 99641, 2013-Ohio-4796, ¶ 12 (same); *State v. Smith*, 8th Dist. Cuyahoga No. 92649, 2010-Ohio-154, ¶ 15 (same).

**{¶26}** Nevertheless, a competency hearing "is not required in all situations, only those where the competency issue is raised and maintained." *State v. Lewis*, 8th Dist. Cuyahoga No. 104283, 2017-Ohio-461, ¶ 29, citing *State v. Asadi-Ousley*, 8th Dist. Cuyahoga No. 96668, 2012-Ohio-106. The record reflects that McNeir failed to properly maintain the issue related to his competency at the hearing. McNeir's attorneys continually disputed McNeir's incompetency allegation by detailing their previous meetings with him. *Compare State v. Were*, 94 Ohio St.3d 173,176, 761 N.E.2d 591 (2002) (reversing the trial court for failing to hold a competency hearing after defense counsel "continually raised" the issue of the defendant's incompetency), and *State v. Smith*, 8th Dist. Cuyahoga Nos. 96582, 96622, and 96623, 2012-Ohio-261, ¶ 28 (observing that the defendant's counsel filed a motion to request a competency evaluation, believing that the motion was in the defendant's best interest). Neither McNeir nor his attorneys filed a motion to request a competency evaluation during this case nor during the one week's time between the May 16, 2016 hearing and the ultimate plea hearing on May 23, 2016, when they had ample opportunity to do so. Further, after speaking to his attorneys, McNeir did not maintain his request for a competency evaluation, informing the court that he was actually upset with the plea bargain and was trying to get a better deal. We find that the trial court was not required to hold a competency hearing because the issue as to McNeir's competency was not properly maintained and, therefore, not properly before the trial court.

**{¶27}** Moreover, even assuming for the sake of argument that McNeir did properly

raise and maintain his request for a competency assessment, as stated above, "the failure to hold a mandatory competency hearing is harmless error where the record fails to reveal sufficient indicia of incompetency." *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986). Here, there is nothing in the record to suggest that McNeir was incompetent to stand trial or enter into a plea, and therefore, any error regarding a competency hearing is harmless. While some of McNeir's questions and statements seemed to manifest a level of incompetency when examined in isolation, the rest of the transcript establishes that those questions and statements were actually his deliberate refusal to cooperate. McNeir was not incompetent, but instead just uncooperative. McNeir's attorneys, who met with McNeir on a number of occasions, informed the court that they did not believe McNeir was incompetent, saying that McNeir instructed them to request an evaluation and that they would "rather not" answer the court's request for evidence of McNeir's alleged incompetency. Had McNeir's counsel actually believed that McNeir was incompetent, they surely would have pursued the matter further. *See State v. Smith*, 89 Ohio St.3d 323, 330, 731 N.E.2d 645 (2000) ("If counsel had some reason to question Smith's competence, they surely would have [raised the issue before the court].").

{¶28} Further, the trial court, who was "particularly well-positioned to observe [McNeir's] demeanor and personally addressed" McNeir on a number of different occasions, believed that McNeir's alleged confusion was a ruse. *State v. Gooden*, 3d Dist. Marion No. 9-06-17, 2006-Ohio-5387, ¶ 26 (holding that the trial court may make

its own observations as to a defendant's competency).   There is nothing remaining in the record to show otherwise, and therefore, there was a lack of sufficient indicia of incompetence in the record and the error, if any, is harmless.   Accordingly, McNeir's second assignment of error is overruled.

{¶29} Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.   The defendant's conviction having been affirmed, any bail pending appeal is terminated.   Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

_
MARY J. BOYLE, JUDGE

MELODY J. STEWART, P.J., and
ANITA LASTER MAYS, J., CONCUR