**[Cite as *State v. Collins*, 2023-Ohio-856.]**

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
CHAMPAIGN COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Appellee | : | C.A. No. 2022-CA-13 |
| | : | |
| v. | : | Trial Court Case No. 2022 CR 031 |
| | : | |
| DANIEL ALAN COLLINS, JR. | : | (Criminal Appeal from Common Pleas |
| | : | Court) |
| Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on March 17, 2023

. . . . . . . . . . .

SAMANTHA B. WHETHERHOLT, Attorney for Appellee

ADAM JAMES STOUT, Attorney for Appellant

. . . . . . . . . . . .

TUCKER, J.

{¶ 1} Defendant-appellant Daniel Alan Collins, Jr., appeals from his conviction for escape. Collins asserts that the conviction was not supported by the evidence. He also asserts the trial court violated his right to due process by conducting an "impromptu

competency hearing" on the first day of trial. For the reasons set forth below, the judgment of the trial court is affirmed.

## I.       Facts and Procedural Background

{¶ 2} In January 2022, Collins was indicted for one count of escape, one count of vandalism, and one count of assault. The matter proceeded to a bench trial during which the State presented the testimony of Madison County Sheriff's Deputy Brian Duffey. According to Duffey, he had been on duty transporting inmates from the Tri-County Jail in Champaign County to their court appearances in Madison County, and he later transported the same inmates back to the Tri-County Jail. During the drive back to the jail, Collins and the other inmates were restrained by safety belts with their handcuffs attached to the belts. Duffey testified that the restraints provided the inmates with a very limited range of motion. However, because Collins had had a cast on one arm, he was only restrained by the safety belt and one handcuff attached to the belt.

{¶ 3} During the return trip, Collins was seated on the driver's side of the transport van next to a window. When the van re-entered Champaign County, Duffey noted that Collins was moving around in his seat and had been able to slightly open the window. Duffey testified that Collins behaved in a manner consistent with attempting to escape. Specifically, Duffey testified that, in his experience, people who attempt to escape exhibit "the same behavior every time; looking around, trying to see who is paying attention to what, trying to see which way he can go. Just acting in the same nature that I witnessed [Collins] doing." Tr. p. 43. Duffey testified that when Collins' behavior became more

pronounced, Duffey had decided to drive on side streets to avoid traffic signals that would require him to bring the van to a stop.

{¶ 4} However, Duffey ultimately had to stop the van at a stop sign. At this point, he heard a commotion, and he heard a female passenger yell. Duffey testified that he immediately put the van into park and exited the vehicle. Duffey walked past Collins' window toward the back door of the van to gain access to the inmate seating area. When he reached the back door, Duffey heard a window shatter. He immediately ran back to Collins' window. Duffey testified that Collins' restraint belt had been removed, and the entire window panel had been knocked out. He also testified that Collins began to cry and admitted that he had kicked out the window.

{¶ 5} The State also presented the testimony of Laura Hunter, who was an inmate riding in the van with Collins. Hunter testified that during the ride back to the jail, Collins was "fidgety." Tr. p. 68. She testified that she had observed Collins remove his safety belt and open his window. Hunter testified that Collins then "elbowed" and punched the male inmate seated beside him. *Id.* According to Hunter, Collins pushed his torso against the male inmate and used the leverage so created to kick out the van window. Hunter testified that Collins had hung his legs out of the window but stopped when Duffey came to the window.

{¶ 6} Collins testified at trial and denied attempting to escape. Collins testified that he opened the window of the van because the inmate seated beside him had smelled badly. Collins admitted that he had removed his belt restraint. He also admitted he became angry and "elbowed" the inmate in the "f—cking face." Tr. p. 101. According

to Collins, he turned away from the inmate, who then put his handcuffed arms over Collins' head. Collins testified that the inmate's handcuffs were just below Collins' throat. According to Collins' testimony, he put his feet against the van wall and began to push his body back against the inmate, and his foot broke the clip on the window which then "just fell right out." Tr. p. 108.

{¶ 7} After Collins testified, the State recalled Duffey as a rebuttal witness. Duffey testified that the inmate seated next to Collins had remained in his belt restraint, which was fastened behind the inmate, and his hands had remained cuffed to the belt. According to Duffey, the inmate's restraints would not have allowed him to get his arms around Collins.

{¶ 8} Following trial, Collins was convicted on all counts and sentenced accordingly. Collins appeals.

## II. Manifest Weight

{¶ 9} The first assignment of error asserted by Collins states:

THE TRIAL COURT ERRED IN CONVICTING MR. COLLINS OF ESCAPE

AND WAS [SIC] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE

{¶ 10} Collins claims his conviction for escape was against the manifest weight of the evidence. He also claims the evidence was insufficient to demonstrate that he was under detention for a first-degree felony offense at the time of the escape attempt.

{¶ 11} A sufficiency of the evidence analysis reviews whether, as a matter of law, the evidence is adequate to support the fact finder's verdict. *State v. Mattox*, 2018-Ohio-

992, 108 N.E.3d 1139, ¶ 23 (2d Dist.). The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 12} In contrast, an appellate court's manifest weight review requires the court to "review the record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created a manifest miscarriage of justice warranting reversal and a new trial." (Citations omitted.) *State v. Cosby*, 2d Dist. Montgomery No. 28395, 2020-Ohio-510, ¶ 6. A reversal based upon a manifest weight of the evidence analysis is reserved for the "exceptional case in which the evidence weighs heavily against the conviction." *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 13} "The weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. Further, "[a] trier of fact is free to believe all, part or none of the testimony of each witness." *State v. Hartman*, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 42 (2d Dist.), quoting *State v. Lewis*, 4th Dist. Scioto No. 01CA2787, 2002 WL 368625, *3 (Feb. 25, 2002), citing *State v. Long*, 127 Ohio App.3d 328, 335, 713 N.E.2d 1 (4th Dist.1998). Therefore, while the reviewing court considers the credibility of witnesses in a challenge to the manifest weight of the evidence, it does so keeping in mind that the "trier of fact is in the best position to determine a witness's credibility through

its observation of his or her demeanor, gestures, and voice inflections." *State v. Clark*, 8th Dist. Cuyahoga No. 94050, 2010-Ohio-4354, ¶ 17.

{¶ 14} Collins was convicted of escape, which is proscribed by R.C. 2921.34. That statute states, in part:

> No person, knowing the person is under detention, other than supervised release detention, or being reckless in that regard, shall purposely break or attempt to break the detention * * *.

R.C. 2921.34(A)(1).

{¶ 15} Attempt is defined by R.C. 2923.02(A), which states that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A).

{¶ 16} Collins argues that his conviction for escape must be reversed because the State presented conflicting testimony regarding the events and because the evidence demonstrated he did not exit the police van.

{¶ 17} We first note that our review of the trial transcript does not demonstrate any conflict in the evidence presented by the State. Indeed, Duffey's testimony was corroborated by Hunter. The testimony revealed that Collins had been moving around in his seat and had opened the van window that was located beside him. According to

the testimony, Collins was only able to slightly open the window. He then removed his safety restraint. Hunter observed Collins assault the inmate seated beside him and then kick out the window. Duffey then appeared at the window and restrained Collins. The only evidence in conflict with this testimony was provided by Collins, who indicated he accidentally broke the window.

{¶ 18} There is no doubt that Collins was under detention at the time he removed his restraints and when he kicked out the window and put his legs through the opening. We conclude that a reasonable trier of fact could have inferred, based upon the testimony of Hunter and Duffey, that by undoing his restraints and kicking out the window of the van, Collins made a purposeful attempt to escape the van. The trial judge was free to credit the testimony of Duffey and Hunter over that of Collins. Further, the fact that Collins was not successful in exiting the van does not change the fact that the evidence supported a finding that he attempted to do so.

{¶ 19} We next turn to Collins' claim that the State did not present testimony sufficient to demonstrate that Collins committed an offense constituting a felony of the second degree.

{¶ 20} The escape statute provides that escape is a felony of the second degree when, at the time of the commission of the offense, the offender was under detention for an offense that constitutes, among other things not relevant hereto, a first-degree felony. R.C. 2921.34(C)(2)(a).

{¶ 21} Collins asserts there was no evidence in the record to support the finding that he had been under detention for a first-degree felony at the time of the escape

offense.   We find this argument lacks merit.

**{¶ 22}** The evidence presented at trial indicated that Collins was being held in jail on an aggravated robbery charge that was a felony of the first degree.   R.C. 2911.01(C).  Specifically, Duffey testified that Collins had been transported to the Madison County court in order to make an appearance on a charge of aggravated robbery.   Collins asserts that Duffey's testimony was insufficient because Duffey stated that he "believed" aggravated robbery was a first-degree felony.   Regardless of Duffey's belief, aggravated robbery is a felony of the first degree.   R.C. 2911.01(C).   More importantly, at the start of trial, defense counsel affirmed to the trial court that the charges pending in Madison County had been for two counts of aggravated robbery and one count of failure to comply.  Thus, there was no question as to whether Collins had been under detention for a first-degree felony at the time he committed the offense of escape.   As the finder of fact, the trial court was permitted to take defense counsel's assertions as a stipulation sufficient to satisfy R.C. 2921.34(C)(2)(a).

**{¶ 23}** The first assignment of error is overruled.

### III.    Competency Hearing and Due Process

**{¶ 24}** Collins' second assignment of error states as follows:

MR. COLLINS [SIC] DUE PROCESS RIGHTS WERE VIOLATED, WHEN THE COURT CONDUCTED AN IMPROMPTU COMPETENCY HEARING ON THE DAY OF THE TRIAL WITHOUT COUNSEL OR THE COURT FILING A MOTION FOR COMPETENCY DETERMINATION WHILE AN

EXAMINATION WAS PENDING

{¶ 25} Collins claims that the trial court denied him due process when it, sua sponte, conducted a competency hearing just prior to the start of trial.

{¶ 26} Competency to stand trial is governed by R.C. 2945.37, which states:

In a criminal action in a court of common pleas, a county court, or a municipal court, the court, prosecutor, or defense may raise the issue of the defendant's competence to stand trial. If the issue is raised before the trial has commenced, the court shall hold a hearing on the issue as provided in this section. If the issue is raised after the trial has commenced, the court shall hold a hearing on the issue only for good cause shown or on the court's own motion.

{¶ 27} A defendant is presumed to be competent to stand trial.  R.C. 2945.37(G). A competency hearing should only be conducted when the issue of competency is raised and maintained.  *State v. NNE Lewis*, 2017-Ohio-461, 84 N.E.3d 294, ¶ 29 (8th Dist.), citing *State v. Asadi-Ousley*, 8th Dist. Cuyahoga No. 96668, 2012-Ohio-106, ¶ 10.

{¶ 28} In this case, the following colloquy occurred just prior to the trial's commencement:

DEFENSE COUNSEL:  Judge, if I may, I apologize for interrupting.  The last time we were in court, I believe my client raised the situation that he's been charged in other counties and his alleged competency was called into question, and the Court asked me to keep a keen eye on that and let the Court know if there was anything that came up regarding his competency.

Since that time - - I just want to put this on the record. Since that time, I've been continually monitoring an online docket in the Madison County Common Pleas Court case. The last entry was April 28th, which was the Judge's order to under - - have my client undergo the psychological evaluation.

I've been speaking to Mr. Collins' family who has been watching the online docket as well. I've been speaking to my client weekly. He says there are no updates.

I, additionally, spoke to my client's attorney in Madison County, Attorney Beck. I spoke to – I didn't get ahold of Attorney Beck, but I spoke to Attorney Beck's law partner and left a detailed message. I've received no phone call back since that day.

Additionally, I've spoken to Attorney James Sweeny, who I think the Court is familiar with. Attorney Sweeny represents my client in a Perry County case.

Additionally, I've spoken to Attorney Sweeny about the competency issue and his standpoint. He also states that there's no updates from the Madison County case.

I spoke to my client just last night at the jail, and just this morning, and I still feel that my client is competent to assist me in his defense.

* * *

THE COURT: Without disclosing the contents of the conversation, can you

share with the Court, and for the record, how many times you've had personal interaction with your client for trial purposes, meaning, starting from the time that you would have reviewed discovery with him, up to today?

DEFENSE COUNSEL: One moment, Judge. Nine times, Judge. And that's in person and over the phone.

THE COURT: And how many times in person, would you say?

DEFENSE COUNSEL: I believe six.

THE COURT: So six of the nine in person?

DEFENSE COUNSEL: Yes, sir.

THE COURT: And of those six, how many would you say lasted more than 15 minutes?

DEFENSE COUNSEL: All six.

THE COURT: Would you say they lasted for more than a half hour?

DEFENSE COUNSEL: Yes.

THE COURT: More than an hour?

DEFENSE COUNSEL: Yeah. They were around probably an hour and a half to two and a half hours each time.

* * *

THE COURT: So you've had an opportunity to both visually observe your client, as well as process his words and statements and that sort of thing?

DEFENSE COUNSEL: Yes, sir.

THE COURT: At any time did you believe that your client did not

understand the nature and objective of the proceedings against him?

DEFENSE COUNSEL: No.

THE COURT: At any time did you believe that your client was incapable of assisting in his defense?

DEFENSE COUNSEL: No.

THE COURT: Would you state for the record your legal experience, please.

DEFENSE COUNSEL: I was admitted to the Bar in 2015. I've handled every level of misdemeanor possible. I've handled every type of felony possible, except I haven't been to trial on a death penalty case yet. I've handled Felony 1s, 2s, 3s, 4s and 5s. I've been to trial on aggravated murder before.

THE COURT: Let me stop you for a second. Who were you employed with when you passed the Bar?

DEFENSE COUNSEL: I wasn't employed when I passed the Bar.

THE COURT: Upon passing the Bar, did you go into private practice initially?

DEFENSE COUNSEL: I did, Judge. * * * That was in Columbus, Ohio. After that, I worked there for approximately seven months. I came to Urbana, Ohio, and opened up my own practice for I believe three months. After that, I accepted a position at the Champaign County Prosecutor's Office. I believe I was there three, four years, something like that. And

then, after that, I went into private practice at the current firm that I'm at now.

* * * I was an associate there for two and a half years and then became partner roughly two and a half years ago.

THE COURT: And when you were initially in Columbus, did you work for a firm?

DEFENSE COUNSEL: I did. * * *

THE COURT: Would you say it's a small, mid-sized, or large firm?

DEFENSE COUNSEL: Mid-sized.

THE COURT: And did you do criminal defense work when you were in Columbus?

DEFENSE COUNSEL: I did.

THE COURT: And then you came to Urbana and you did criminal defense work?

DEFENSE COUNSEL: Yes. Among other things, as well. General business. General practice.

THE COURT: And in the prosecutor's office, you were an assistant prosecutor?

DEFENSE COUNSEL: Yes, sir.

THE COURT: And then, in private practice now, you do criminal defense work; is that accurate?

DEFENSE COUNSEL: Yes, it is.

* * *

THE COURT: As part of your criminal defense work with your current firm, did you handle an aggravated murder case?

DEFENSE COUNSEL: Yes, Judge.

* * *

THE COURT: Have you had any conversation with Attorney Beck as to why he raised the competency issue? Or was it the Madison County judge that raised it?

DEFENSE COUNSEL: Judge, to the first part of your question, Attorney Beck has never returned my call. I've called twice. The second time I called, I spoke to Attorney Beck's law partner. I spoke to him for about five minutes; he was not familiar - - in detail, at least, familiar with Mr. Collins' case with Attorney Beck. He assured me that Attorney Beck would call me back regarding the competency issue and I never received a call. I have called the Madison County Clerk of Courts a couple times asking if the last journal entry could - - the last journal entry I saw was April 28th, which was the Court's order ordering my client to undergo psychological evaluation for competency issues. * * * There's been nothing since that day. I checked last night and there was nothing else. Also, Madison County had the - - their online docket has the ability to click links and pull up the Journal Entry itself; there's nothing on there that signified a return of my client's competency evaluation. I believe he's been evaluated.

THE DEFENDANT: Yes.

DEFENSE COUNSEL: He's been evaluated, but there's nothing returned from the psychiatrist or psychologist. When I hit a dead end there, for the second dead end, I reached out to Attorney James Sweeny because I believed he was representing my client in Perry County on felony cases. I was able to get ahold of Attorney Sweeny, and asked Attorney Sweeny to keep me informed of when that psychological evaluation would return as he was aware of it as well. And then he asked me to keep him aware of what was going on in this case in Champaign County.

THE COURT: All right. So has Attorney Sweeny had contact with your client?

DEFENSE COUNSEL: Yes.

THE COURT: And did Attorney Sweeny give you any indication that he felt competency was an issue?

DEFENSE COUNSEL: He did.

THE COURT: What was Attorney Sweeny's position?

DEFENSE COUNSEL: Attorney Sweeny was taking the position, which I disagree with, but, again, Attorney Sweeny took the position, and reading the facts of the case at the time of the offense, my client made certain statements that I'll say somewhat had no basis in reality. I've actually spoken to my client about those.

THE COURT: This is in Sweeny's case?

DEFENSE: Yes.

THE COURT: Or in this case?

DEFENSE COUNSEL: In Sweeny's case. Yeah. And I've spoken to my client about those specific statements that he made. Again, those have no bearing on this case, the criminal side of this case. My client has, generally, notified me that what he said at that time, he understands to not be correct, if that makes any sense, Judge.

THE COURT: All right. So there's a difference in the Court's interpretation of what you're saying with regard to Sweeny's observations. Comments made at the scene or at the time of the offense might go to an NGRI wrongfulness, understanding of wrongfulness of the conduct, which the Court views as separate and apart from a competency issue. But if you were - - if Sweeny is telling you just to say, Hey, during his underlying offense he made certain comments that made me believe that there may be more there to investigate in terms of his ability to assist me in defending him, then that's how the Court will accept the statements.

DEFENSE COUNSEL: That's exactly, actually, what we spoke about for about 25 minutes is the difference between the alleged competency issue and an NGRI defense. That's about 95 percent of what the conversation centered around.

THE COURT: Does your client recall when he was evaluated?

DEFENSE COUNSEL: He said about two weeks ago, Judge.

THE COURT: Was it at Forensic Psychiatry Center?

THE DEFENDANT: NetCare.

THE COURT: NetCare?

DEFENSE COUNSEL: Yes, Judge, the April 28th, Marysville online - - or excuse me - - Madison County online docket – and this is, by the way, Case No. CRI-2022-0024. And the last entry from the Court is on April 28th, which states the Judge's entry and certification/NetCare is appointed to conduct the evaluation. That's the last statement.

THE COURT: So, as you guys know, I mean, NetCare has 30 days, generally, to complete the evaluation process and return a report. So let's address a couple of things. Number One, under 2945.37(G), a Defendant is presumed to be competent to stand trial. And, in general, 2945.37(1)(A) doesn't place discretion in the Court's hands to determine whether an evaluation should be ordered of a present mental condition, unless the issue of competency is raised. I'm not interpreting your statements as raising the issue of competency. I'm interpreting your statements as a kind of a, Hey, I just want the record to reflect that my client has had a competency evaluation in another county, but I don't have one here, and I don't need one here. Is that a fair statement?

DEFENSE COUNSEL: That's a very fair statement, Judge. I just wanted to place everything on the record, as the Court requested that of me at the final pretrial. I just want to make the record clear that due diligence has been made, and my client is well aware of what's going on and has been

able to assist me the whole way.

THE COURT: All right. The Court is also aware that - - and I don't mean this in a – to cast a negative inference to the Madison County defense counsel. But, you know, there are times, certainly, that defense attorneys, as a matter of trial strategy, may seek to pursue or lay the foundation for certain defenses by seeking to raise competency and seeking an evaluation in the hopes that it might turn something up that can later be used by the defense. And so I'm not suggesting that Attorney Beck was being nefarious, but I am suggesting that there are other reasons why attorneys may request a competency evaluation other than the purpose of requesting a determination of competency to stand trial.

And the reason I'm saying that is because the Court is concerned that, since the subject matter of competency has been introduced here, you know, does that automatically mean that this Court is mandated to stop the proceedings and wait to figure out what's happening in Madison County. And I don't think that's what you're suggesting, Defense Counsel. But in addressing this issue in the event another Court may look at these proceedings, I just want to make sure that we're giving the subject matter, in your words, Defense Counsel, due diligence, and that we're, you know, discussing it and making sure we address it before moving on.

For the record, the Court believes that the Defendant has always conducted himself appropriately in Court. Has made good eye contact with

the Court. When addressing Defense Counsel, the Court believes that the Defendant has been attentive.

The Court has received no report from the jail or from the Sheriff's Office that the Defendant has been noncompliant or disoriented as to where he's at or why he's here.

We may all recall that the Defendant waived his right to a jury trial, and the Court went through that process with him, and the Defendant affixed his signature where he was supposed to. And so in this Court's view, the Court doesn't believe that it has an issue to raise.

* * *

So, at this point, the Court is taking Defense Counsel's comments as, Hey, I just want to let you know, these are the steps I took to address this. I still don't believe it's an issue. And I'm taking from what you're saying, Defense Counsel, that you think we can go forward?

DEFENSE COUNSEL: That's correct, Judge.

THE COURT: All right. Mr. Prosecutor, did you wish to make any statement or ask anything?

THE PROSECUTOR: Your Honor, the only thing the State would put on the record is simply listening to Defense Counsel, I believe that Defense Counsel has the best interest of his client at stake here. There would be no reason for Defense Counsel to want to push this matter through if he had any thoughts that there was a competency issue at this time. So long as

the Defendant does not wish or believe that this is an issue, the State has no issue with Defense Counsel, what Defense Counsel believes, and what this Court has already said here today.

THE COURT: * * * Mr. Collins, have you been able to hear what your lawyer and the Court have been saying?

THE DEFENDANT: Yes, sir.

THE COURT: The reason that your lawyer has talked about your Madison County situation is because this Court, in handling this case, wants to be sensitive to your other cases and things that are going on in your other case. Do you understand that generally?

THE DEFENDANT: Yes, sir.

THE COURT: Your attorney and you, in your other case in Madison County, have chosen to pursue a legal issue that your attorney here doesn't believe - - doesn't believe rises to the same issue here. Do you understand that?

THE DEFENDANT: Yes, sir.

THE COURT: And I don't want to ask you about your Madison County situation because that's a matter of privilege between you and your attorney. I don't want to stick my nose in your business. But I just want to make sure that you understand that your attorney here is just trying to be complete in making sure that the Court knows that, Hey, Judge, my client's got this other situation in Madison County, and we don't think the same

situation in Madison County, and we don't think the same situation exists here, and we think we can go forward with the trial. Do you understand that?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: Does that raise any concern with you?

THE DEFENDANT: No, sir.

THE COURT: You understand why you're here today?

THE DEFENDANT: Yes, sir, Your Honor.

THE COURT: Why do you believe you're here?

THE DEFENDANT: To prove my innocence for my charges here in Champaign County.

THE COURT: Do you know what you're charged with here?

THE DEFENDANT: Yes. F2 escape, and an F5 vandalism and F1 assault.

THE COURT: All right. Have you had the chance to speak to your lawyer about these charges?

THE DEFENDANT: Multiple times.

THE COURT: Have you had a chance to review the discovery packet that the State provided?

THE DEFENDANT: Of course.

THE COURT: Do you share your lawyer's opinion that you guys have met in person about six times?

THE DEFENDANT:   Yes, sir.

THE COURT:   And do you share your lawyer's opinion that those meetings have occurred in the range of about an hour and a half to two hours?

THE DEFENDANT:   Yes.

THE COURT:   Are you satisfied with your lawyer's representation?

THE DEFENDANT:   Completely satisfied.

THE COURT:   Do you have confidence in your attorney?

THE DEFENDANT:   Of course.

THE COURT:   Is it your desire to proceed with trial today?

THE DEFENDANT:   Yes, sir.

THE COURT:   All right.   Thank you.   The Court finds, after listening to the statements of counsel and the Defendant, that there is no issue of competency in the Court's opinion.   Again, the Court finds that the Defendant was appropriately responsive to counsel - - I mean, the Court's questions; that he made good eye contact; that he doesn't demonstrate any indication that he did not understand the nature or objective of the proceedings and doesn't feel that he can't help his lawyer in his defense. We'll proceed to trial then[.]

Tr. p. 6-22.

{¶ 29} Even a cursory review of the transcript demonstrates that the trial court did not conduct a competency hearing.   Instead, the transcript shows that the court merely, through an abundance of caution, confirmed defense counsel's decision not to assert a

claim that Collins was not competent to stand trial. The trial court's questioning also demonstrated that Collins did not personally assert the need for such a hearing and that there was nothing revealed which would have provided the court with a basis for requiring, sua sponte, a competency hearing.

{¶ 30} We conclude that Collins' claim that the trial court conducted an "impromptu" competency hearing lacks merit. We further conclude that there is nothing in this record suggesting Collins was not competent to stand trial. Accordingly, the second assignment of error is overruled.

## IV. Conclusion

{¶ 31} Both of Collins' assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . .

EPLEY, J. and LEWIS, J., concur.