[Cite as *State v. Armstrong*, 2015-Ohio-3343.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 101961**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## HARVEY ARMSTRONG

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-581662-A

**BEFORE:** Keough, P.J., E.T. Gallagher, J., and Boyle, J.

**RELEASED AND JOURNALIZED:** August 20, 2015

**ATTORNEY FOR APPELLANT**

Kevin M. Cafferkey
1370 Ontario Street
2000 Standard Building
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
By:   Brian Kraft
          Melissa Riley
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

KATHLEEN ANN KEOUGH, P.J.:

{¶1} Defendant-appellant, Harvey Armstrong, appeals his convictions and sentence following a plea. For the reasons that follow, we affirm.

{¶2} In January 2014, Armstrong was charged with two counts of rape, each containing notice of prior conviction, repeat violent offender, and sexually violent predator specifications. He was also charged with one count each of gross sexual imposition with a sexually violent predator specification, kidnapping, with notice of prior conviction, repeat violent offender, sexual motivation, and sexually violent predator specifications; aggravated burglary with notice of prior conviction and repeat violent offender specifications; menacing by stalking, with sexually violent offender specification; and one count of telecommunications harassment. Armstrong pleaded not guilty to the charges and trial was scheduled for Monday, August 4, 2014.

{¶3} From the record, we can glean that defense counsel and the prosecutor met with the trial judge in chambers the week prior to trial. During that in-chambers meeting, the parties discussed a possible sentence Armstrong would receive if he entered into a plea agreement. It is apparent that the trial judge and the parties discussed a possible sentencing "range of three to five, or three to six" years. Whether the trial judge indicated that this range "*could* be fair" or "*would* be fair," is not entirely clear from the

record. (Emphasis added.) But, what is clear is that the trial judge indicated that defense counsel could take the content of their in-chamber discussion back to his client.

{¶4} On the day of trial, Armstrong entered into a plea agreement with the state. He pleaded guilty to an amended count of rape with the attendant notice of prior conviction and repeat violent offender specification, an amended count of kidnapping with notice of prior conviction, repeat violent offender and sexual motivation specifications, menacing by stalking as amended, and telecommunications harassment. The state nolled the remaining charges and specifications.

{¶5} Defense counsel agreed with the plea agreement and further stated on the record,

> * * * Respectfully, I have met with my client both Friday, Saturday, and Sunday. We have gone over the case. We have gone over the — what the plea would be. And, obviously, my client has concerns because of the potential spread of years that are involved in the plea with these kind of charges, okay. I would highlight I have gone over everything with him. I have indicated to him that myself and [assistant prosecutor] have presented some of the facts of the case with this Honorable Court so the Court would at least have some idea.
>
> I have also indicated to Mr. Armstrong that this Honorable Court has indicated that they would like a presentence investigation to get kind of a better picture of my client and what he's been doing, certainly, you know, in his life in the last few years and get a better idea about this case.

(Tr. 8-9.)

{¶6} Armstrong denied that any threats or promises had been made to induce him into changing his plea. (Tr. 12.) Thereafter, the trial court set forth the penalties for the offenses — that rape carried a possible penalty of three to eleven years, that kidnapping carried a possible penalty of three to eleven years, menacing by stalking carried a

potential penalty of six to eighteen months, and that telecommunications harassment carried a potential penalty of up to six months. The court also explained that it could sentence him to consecutive sentences; thus, the minimum sentence he was facing was three years with a maximum sentence of 23.5 years.

{¶7} The court then advised Armstrong of his Crim.R. 11 rights. At the end of the plea colloquy, the court again questioned Armstrong whether any threats or promises were made to him other than what was stated in open court and on the record.

THE DEFENDANT: Right, no promises, no threats, Your Honor.

THE COURT: Do you understand that there is no promise of a particular sentence?

THE DEFENDANT: I understand, Your Honor. My concern is more of an agreement.

THE COURT: Uh - huh. Well, I understand that you and your counsel may have spoke about a certain time that you will be spending in prison; and as I indicated to your counsel — and I am sure he indicated the same to you — this Court will look at all of the factors on the day of sentencing when determining how much time you can get. That's the reason why I went through everything with you, because I want you to understand that you are looking at potentially as much as 22 years in prison. Doesn't mean you will get 22 years. But you need to understand at the time you are pleading that that's what you're looking at.
And there's no promise from this Court of how much time that you're going to get. Do you understand that?

THE DEFENDANT: I understand, Your Honor.

(Tr. 21-22.)

{¶8} Thereafter, both defense counsel and the state agreed that the court complied with Crim.R. 11. Armstrong pleaded guilty in accordance with the plea agreement and

the court found that Armstrong made a knowing, intelligent, and voluntary plea. The matter was continued for sentencing in September following a presentence investigation.

{¶9} At sentencing, the trial court heard statements from the parties, including the victim and the defendant, and reviewed the presentence investigation report. After considering the relevant statutory factors of R.C. 2929.11 and 2929.12, the trial court imposed a total prison term of seven years. After stating all the terms and conditions of Armstrong's sentence, the court asked Armstrong whether he understood the court's sentence. Armstrong replied,

> THE DEFENDANT: Yes. But in accepting this plea initially, the agreement was for a certain amount of time. That time exceeds my agreement, which what do I do about that?
>
> THE COURT: You had an agreement with who?
>
> THE DEFENDANT: According to what I was told, the agreement was made between my attorney and the prosecutor, and I have a paper here to prove it and signed.

(Tr. 46-47.)

{¶10} It became readily apparent that Armstrong was referencing the conversation that occurred during the in-chamber conference the week prior to Armstrong accepting the plea agreement. Despite the insinuation by Armstrong, the record reflects that no written plea agreement was entered into.

{¶11} Armstrong's attorney explained to the court what had occurred.

> Respectfully, Judge, highly respectfully, I had conversations with this honorable court on Friday before trial and we had agreed to a range of — and I can't think of the exact words — but if I told my client the range was

between three and five and three and six, would be an honest representation; and you indicated to me that it would be.

* * *

So at this point in time I gather my client would want to withdraw his plea because I indicated to him what the agreement was, and my understanding is — and I think [assistant prosecutor] had the victim actually — well, I think he at the time of the plea indicated the victim was requesting a three-year prison sentence or around the three-year prison sentence. * * *

THE COURT: My remembering of all of this, first of all, there was never an agreement. And at the time of plea I'm very careful to tell the defendants what the maximum time is. Now, [assistant prosecutor] just spoke, and I think he indicated that there was no agreement on time.
        Was there an agreement on time, [assistant prosecutor]?

[Assistant Prosecutor]: Your Honor, there was no agreement on time in terms of you know, the state wasn't agreeing to any particular amount of years. * * *
        And I'm aware that there is kind of a range that the Court was considering, but there was not anything that was definite, I guess I should say. And there wasn't any agreed time between the State of Ohio and the defendant.

(Tr. 47-49.)

{¶12} The court explained its justification for imposing the seven-year prison sentence, denying that it promised a specific sentence.

But at no time — at no time did this court say that they would give this defendant three years, four years, five years, six years, or 11 years. I never — I never do that. For this very reasons I do not do that. There are — attorneys come to me all the time and they say, hey, I have an agreed — I have an agreement. This time you didn't even have an agreement with the prosecution. What you had was what you had kind of sold your client on, and the prosecutor says, well, I'm not in agreement.

(Tr. 50.)

**{¶13}** The court further denied defense counsel's oral motion to withdraw Armstrong's plea. However, the court admitted that it told defense counsel during the chambers meeting that a sentence of three to six years "could be fair."

> [Defense Counsel]: All right. So because I did represent to my client that having talked to the Court and the prosecutor in that meeting that his range — that a fair range would be three to five or three to six years, that — I told my client that my client —
> My question to you, Judge, or my response to you is if I told my client a fair range would be three to five or three to six years and you indicated to me that would be fair to tell your client that —
>
> THE COURT: It was fair to tell him.
>
> [Defense Counsel]: All right.
>
> THE COURT: It was fair to tell him.

(Tr. 53.)

**{¶14}** Armstrong now appeals, raising two assignments of error, both challenging that his plea was coerced and involuntarily made.

**{¶15}** A defendant's plea must be knowingly, intelligently, and voluntarily made. *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). The enforcement of a plea that does not satisfy all three of these criteria is unconstitutional under both the United States and Ohio Constitutions. *Id.*

## I. Coercion

**{¶16}** In his first assignment of error, Armstrong contends that the court committed reversible error and abused its discretion when it improperly coerced defendant's guilty plea and his plea was therefore involuntary and void.

**{¶17}** Although a trial judge's participation in the plea bargaining is not prohibited under Crim.R. 11, the Ohio Supreme Court has cautioned that "the judge's position in the criminal justice system presents a great potential for coerced guilty pleas and can easily compromise the impartial position a trial judge should assume." *State v. Byrd*, 63 Ohio St.2d 288, 292, 407 N.E.2d 1384 (1980). Judicial participation is strongly discouraged but does not render a plea per se involuntary; the ultimate inquiry is whether the judge's active conduct could have led the defendant to believe he could not get a fair trial, including a fair sentence after trial, and whether the judicial participation undermined the voluntariness of the plea. *State v. Sawyer*, 183 Ohio App.3d 65, 2009-Ohio-3097, 915 N.E.2d 715, ¶ 54 (1st Dist.), citing *Byrd* at 293.

**{¶18}** Since the United States Supreme Court's decision in *Missouri v. Frye*, ___ U.S. ___, 132 S.Ct. 1399, 182 L.Ed.2d 379 (2012), it is important that a record be made demonstrating that a defendant is aware of a plea deal if one is presented, which may necessarily involve the participation of the trial judge in placing the plea deal on the record. *State v. Jabbaar*, 8th Dist. Cuyahoga No. 98218, 2013-Ohio-1655, 991 N.E.2d 290, ¶ 27. "A trial judge's participation in the plea bargaining process must be carefully scrutinized to determine if the judge's intervention affected the voluntariness of the defendant's guilty plea." *Byrd* at 293. A judge's comments must not be considered in isolation, however; instead, we consider the record in its entirety to determine the voluntariness of the guilty plea. *Jabbaar* at ¶ 29, citing *State v. Finroy*, 10th Dist. Franklin No. 09AP-795, 2010-Ohio-2067, ¶ 7.

{¶19} Moreover, a guilty plea, if induced by promises or threats that deprive it of the character of a voluntary act, is void. *State v. Kelly*, 8th Dist. Cuyahoga Nos. 91875 and 91876, 2010-Ohio-432, ¶ 21, citing *State v. Allen*, 6th Dist. Sandusky No. S-09-004, 2009-Ohio-3799, ¶ 16. In *State v. Triplett*, 8th Dist. Cuyahoga No. 69237, 1997 Ohio App. LEXIS 493 (Feb. 13, 1997), this court found that: "[w]here the trial court promises a certain sentence, that promise becomes an inducement to enter a plea, and unless that sentence is given, that plea is not voluntary. Thus, a trial court commits reversible error when it participates in plea negotiations but fails to impose the promised sentence." *See also State v. Simms*, 8th Dist. Cuyahoga No. 47796 (Dec. 6, 1984); *State v. Elias*, 8th Dist. Cuyahoga No. 88945, 2007-Ohio-5444 (the trial court committed reversible error when it failed to impose the promised sentence).

{¶20} In this case, the issue is whether the trial court's comments made in an in-chamber meeting induced or coerced the defendant into accepting the plea. Based on the record before this court, we cannot say that the trial court coerced Armstrong into accepting the plea. Unlike in *Kelly, Elias, Triplett*, and *Simms*, the trial court in this case did not expressly promise any particular sentence.

{¶21} During the plea hearing and after Armstrong acknowledged that no promises or threats were made, the trial court explained to Armstrong the sentencing possibilities regarding his plea. When the court again asked Armstrong about any promises after the maximum penalty advisement, Armstrong again agreed that he received no promises for his plea. However, when Armstrong questioned the court about the "agreement," the

court made it very clear on the record that as it told his attorney, "this Court will look at all of the factors on the day of sentencing when determining how much time you can get." (Tr. 22.) The court reiterated that he could be sentenced up to 22 years in prison and that the court was making no promises. Armstrong stated that he understood. At that point, Armstrong could have chosen not to accept the plea agreement if he believed that he would not receive the "three to five" or "three to six" range as discussed with his counsel. However, even after being told by the court that it was not promising any particular sentence, Armstrong still pleaded guilty.

**{¶22}** We recognize that the trial court allowed defense counsel to take a sentencing range back to the defendant, knowing that the basis for doing so was to facilitate a plea. The defense attorney, in good faith, expressed to his client that the trial court stated that a sentencing range of "three to five" or "three to six" was fair. In such instances, a written plea agreement, including an agreed sentence, is the better option for all parties involved, especially the defendant. *See State v. Padilla*, 8th Dist. Cuyahoga No. 98187, 2012-Ohio-5892 , ¶ 32, 36 (S. Gallagher, J., concurring).

**{¶23}** Armstrong's first assignment of error is overruled.

## II. Motion to Withdraw

**{¶24}** Armstrong argues in his second assignment of error that the court committed reversible error and/or abused its discretion when it denied his motion to withdraw his guilty plea.

{¶25} "A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. The Supreme Court of Ohio has defined "manifest injustice" as a clear or openly unjust act. *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998). This standard permits a defendant to withdraw his plea only in extraordinary cases. *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977). The defendant moving for a postsentence withdrawal of a guilty plea, has the burden of establishing the existence of a manifest injustice. *Id*. at paragraph one of syllabus.

{¶26} The decision to grant or deny a Crim.R. 32.1 motion is committed to the sound discretion of the trial court. *Id*. at paragraph two of the syllabus. We will not reverse a trial court's decision absent an abuse of discretion. *Id*., citing *State v. Xie*, 62 Ohio St.3d 521, 584 N.E.2d 715 (1992). A trial court abuses its discretion when its judgment is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶27} In this case, after sentencing, Armstrong orally moved to withdraw his plea on the basis that the trial court did not impose the sentence in the range that Armstrong believed he was receiving. Therefore, Armstrong bears the burden of establishing the existence of a manifest injustice. In the absence of an agreed and promised sentence, we cannot find, nor has Armstrong even argued, that the sentence imposed constitutes a

manifest injustice considering that he was fully aware that he was facing over 20 years in prison for his offenses.

{¶28} Accordingly, Armstrong has failed to withstand his burden of establishing the existence of a manifest injustice. The trial court did not abuse its discretion in denying Armstrong's oral postsentence motion to withdraw his plea. The second assignment of error is overruled.

{¶29} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KATHLEEN ANN KEOUGH, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., CONCURS IN JUDGMENT ONLY;
MARY J. BOYLE, J., CONCURS IN JUDGMENT ONLY