[Cite as *State v. Bush*, 2018-Ohio-4213.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 106392**

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**ALLANTE T. BUSH**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-16-603748-A, CR-16-610468-C, and CR-16-611982-A

**BEFORE:** Stewart, P.J., Laster Mays, J., and Keough, J.

**RELEASED AND JOURNALIZED:** October 18, 2018

**ATTORNEYS FOR APPELLANT**

Jeffrey P. Saffold
Allison S. Breneman
The Bradley Building
1220 West 6th Street, Suite 303
Cleveland, OH 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

Katherine Mullin
Brandon Piteo
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, P.J.:

{¶1} Defendant-appellant Allante Bush appeals after he pleaded guilty to various crimes in four cases. The court sentenced Bush to an aggregate prison term of 16 years. On appeal, in his three assignments of error, Bush argues that his guilty pleas were involuntary, that he was denied effective assistance of counsel, and that the court erred when imposing his sentence. For the reasons that follow, we affirm.

{¶2} In Cuyahoga C.P. No. CR-16-603748-A, Bush pleaded guilty to trafficking in drugs and attempted tampering with evidence, and was sentenced to concurrent prison terms totaling 18 months. In Cuyahoga C.P. No. CR-16-608440-A, Bush pleaded guilty to multiple counts of trafficking in drugs, endangering children, and possession of criminal tools, and the court imposed concurrent sentences totaling 36 months in prison.[1] In Cuyahoga C.P. No. CR-16-610468-C, Bush pleaded guilty to participating in a criminal gang, having weapons while under disability, improperly handling firearms in a motor vehicle, receiving stolen property, and multiple counts of endangering children. He was sentenced to both concurrent and consecutive prison terms for a total of nine years. Finally, in Cuyahoga C.P. No. CR-16-611982-A, Bush pleaded guilty to having

---

[1] Bush's guilty plea in CR-16-608440-A occurred at a previous hearing for which he did not include a transcript. In the absence of such a record of proceedings this court presumes regularity. *Cleveland v. McCane*, 8th Dist. Cuyahoga No. 103457, 2016-Ohio-3459, ¶ 31-32.

weapons while under disability and receiving stolen property and was sentenced to concurrent prison terms for a total of 30 months. The court ordered Bush to serve the total sentence in each of his four cases consecutive to the others for an aggregate sentence of 16 years in prison.

{¶3} In his first assignment of error, Bush argues that his guilty pleas were involuntary because the trial court inappropriately participated in the plea bargaining process and coerced him into pleading guilty in CR-16-603748-A, CR-16-610468-C, and 16-CR-611982-A. We disagree.

{¶4} A defendant who pleads guilty must do so knowingly, voluntarily, and intelligently. *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25. A guilty plea that lacks any of these elements is invalid. *Id.* Although the Supreme Court has "strongly discourage[d]" trial court participation in the plea bargaining process, a plea is not presumptively invalid merely because of such involvement. *State v. Byrd*, 63 Ohio St.2d 288, 293, 407 N.E.2d 1384 (1980). Instead, the relevant inquiry is whether this involvement impacted the voluntariness of the plea. *Id.* "Ordinarily, if the [court's] active conduct could lead a defendant to believe he cannot get a fair trial because the [court] thinks that a trial is a futile exercise or that the [court] would be biased against him at trial, the plea should be held to be involuntary * * *." *Id.* at 293-294. In determining whether a guilty plea was involuntary, this court considers the entire record. *State v. Armstrong*,

8th Dist. Cuyahoga No. 101961, 2015-Ohio-3343, ¶ 18.

{¶5} In support of his argument, Bush cites the trial court's responses to his request for new counsel and his assertions of his trial rights. At a hearing less than two weeks before three of his cases were set for trial, Bush declared he wanted new counsel. The court asked if Bush had retained or at least spoken with new counsel. Bush said he had not. The court responded that Bush, in seeking new representation at this stage of the case, was "asking for a lot" in light of the "voluminous discovery" in the cases and the proximity of the trial date. The court noted that new counsel would be required to adequately prepare his defense and still comply with the trial date and other deadlines.

{¶6} The court asked Bush whether there was a particular reason that caused him to think his attorney-client relationship degraded. The court noted that counsel had "put a lot of work" into preparing these cases and had previously represented Bush, which seemed to have "worked out fairly well over the years."

{¶7} Bush responded that he "just felt that [counsel] wasn't working in [his] favor" as of late, and referenced a recent argument between Bush and counsel during a jail phone call. Bush stated that counsel was verbally abusive, claiming that counsel challenged Bush to fire him, and told Bush he was "going to make sure you get F'd [sic] while you're doing 20 years in prison."

{¶8} The court did not inquire further into the content of the conversation,

but instead explained that "sometimes people get hot, people get frustrated, and people scream at each other," and that "[t]he art of advocacy between clients and attorneys is all over the board." The court encouraged Bush to meet again with counsel to see if tempers had cooled and if the relationship could be reconciled, but stated "I'm not telling you can't hire somebody new, I'm just saying before you make such a drastic step at this juncture, I think you should each, you know, approach each other with an open mind and a cooler head and see if whatever you felt last week is still there or if you could go forward."

{¶9} Counsel acknowledged there was a "heated discussion" and that there was some frustration on Bush's end in light of the "serious" allegations and jeopardy he faced in the cases. Counsel agreed with the court's suggestion for Bush to reassess whether the relationship could work as opposed to seeking new counsel. Bush also agreed to meet with counsel. Bush did not raise the issue of retaining new counsel again. Instead, at a subsequent hearing, during the plea colloquy, Bush confirmed that he was satisfied with counsel's representation.

{¶10} The court was reasonable in its investigation and evaluation of Bush's complaint against counsel and in offering a viable solution, and Bush, although free to reject the court's suggestion, accepted it and did not raise the issue again. We do not think the trial court's response as to Bush's request for new counsel would lead Bush to believe he would not get a fair trial or indicated any manner of bias.

{¶11} Bush also asserts that the court coerced him into pleading guilty. In support of this claim, Bush refers to multiple times during the proceedings where he stated that he wanted to go to trial.

{¶12} During the plea hearing, Bush expressed his desire to go to trial after the state outlined the offenses and the potential exposure of 48 years in prison he faced in the four cases. The state explained that by pleading guilty Bush would limit his exposure to 24.5 years. The court commented "[t]hat's a pretty good deal that the [s]tate is offering, I guess * * *." Bush nevertheless maintained his desire to go to trial and the court adjourned for a recess.

{¶13} After the recess however, the state advised the court that Bush would accept the state's offered plea and outlined the terms. Bush's counsel then informed the court that although Bush had indicated that the plea offer was acceptable, he had since changed his mind again and wanted to go to trial. The court responded "[o]kay, no more pleas. We are just going to trial." The proceeding was adjourned. The following day, however, Bush advised the court that he again changed his mind, and wished to plead guilty.

{¶14} Review of the record reflects that although Bush waffled in his decision before ultimately pleading guilty, there is no indication that the court coerced him into doing so. *See State v. Jabbaar*, 2013-Ohio-1655, 991 N.E.2d 290, ¶ 33 (8th Dist.) ("[T]he trial judge telling [the defendant] he 'should consider'

the plea bargain * * * is not the same as telling him 'to take' the plea bargain."). Moreover, we find no indication that the court actually participated in the plea bargaining process; the court's comment about the state's offer of a nearly 50 percent reduction in his exposure to prison being a "pretty good deal" does not indicate inappropriate court participation in the plea bargain. *Compare Byrd,* 63 Ohio St.2d at 291, 407 N.E.2d 1384 ("The judge took a very active role in arranging the plea bargain. In essence, he negotiated with the prosecuting attorney.").

{¶15} Additionally, the fact that a day elapsed from the time that the court made the allegedly coercive statement and when Bush accepted the plea offer further undercuts his assertion that his plea was involuntary. *See State v. McNeir*, 8th Dist. Cuyahoga No. 105417, 2018-Ohio-91, ¶ 19 (coercive or threatening statements made less so when guilty plea occurs days later). There is no indication that Bush's decision to plead guilty was involuntary or the product of anything beyond his own choice. We therefore overrule his first assignment of error.

{¶16} In his second assignment of error, Bush argues that he was denied the effective assistance of counsel because his relationship with counsel "degraded" during the course of the representation.

{¶17} To prove ineffective assistance of counsel, a defendant is required to show (1) counsel's representation was both deficient, falling "below an objective

standard of reasonableness," and (2) a reasonable probability that absent this deficient performance the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 671, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the context of a guilty plea, a defendant must show both a deficient performance and "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty * * *." *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992), citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

{¶18} As previously noted, Bush claims that counsel was verbally abusive during a private conversation. Regardless of whether the alleged verbal abuse occurred as Bush claims, or whether such statements were appropriate, it is not clear that such conduct constitutes deficient performance. Nevertheless, assuming that it does, there is no indication of prejudice. Bush does not show how, absent counsel's statements, the outcome would have been any different.

{¶19} Bush also claims he suffered ineffective assistance of counsel because his attorney encouraged him to plead guilty despite his expressed desire to go to trial. He argues that counsel "push[ed]" him to plead guilty by discussing the benefits of pleading guilty with the court. Counsel further indicated "I have made a very strong recommendation to [Bush] as to what I think he ought to do * * * [s]o for the record, I have recommended that the plea be accepted, the offer be accepted."

{¶20} An attorney's advisement to plead guilty is not per se ineffective assistance of counsel. *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 85. Instead, "'[a] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.'" *Id.*, quoting *Strickland*, 466 U.S. at 689, 671, 104 S.Ct. 2052, 80 L.Ed.2d 674. Here, the fact that Bush initially disagreed with counsel's advice to accept the plea deal does not amount to deficient performance. *See U.S. v. Andolini*, 705 F.3d 335, 337 (8th Cir.2013) (defendant's dissatisfaction with counsel does not establish deficient performance or prejudice). He has not demonstrated any conduct on counsel's part that overrode Bush's decision on whether to accept the plea bargain. This assignment of error is likewise overruled.

{¶21} In his third assigned error, Bush argues that the court abused its discretion by failing to consider the purposes and principles of felony sentencing and properly weigh the seriousness and recidivism factors when it imposed consecutive sentences.

{¶22} It is well-settled that R.C. 2953.08(G)(2) does not permit this court to review a felony sentence for an abuse of discretion. *See, e.g., State v. Jenkins*, 8th Dist. Cuyahoga No. 105881, 2018-Ohio-2397, ¶ 69. Instead, we may disturb a felony sentence only if we clearly and convincingly find that either "the record does

not support the sentencing court's findings" or "the sentence is otherwise contrary to law." R.C. 2953.08(G)(2); *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1, 21-23.

{¶23} The court's journal in each case reflects that the court "considered all required factors of the law" and found that "prison is consistent with the purpose of R.C. 2929.11." The court's statements that it considered the requisite statutory factors, alone, satisfy its obligations under the sentencing statutes. *State v. Binford*, 8th Dist. Cuyahoga No. 105414, 2018-Ohio-90, ¶ 39. Nevertheless, the transcript of the proceedings indicates the court considered the factors in depth. The court considered Bush's "long history of dealing in drugs" and his affiliation with a gang implicated in drug trafficking, robberies, shootings, and murders. Bush himself indicated he carried guns and was ready and willing to use them; indeed, three firearms were confiscated from him in these cases. Additionally, the court emphasized the severity of the crimes in light of the fact that Bush was dealing heroin and fentanyl.

{¶24} As to Bush's consecutive sentence challenge, he concedes that the court articulated the requisite factors to impose consecutive sentences on the record. Instead, he complains that the facts do not support the imposition of consecutive sentences. We take this to be a claim that "the record does not support the sentencing court's findings." R.C. 2953.08(G)(2).

**{¶25}** A trial court must make specified findings pursuant to R.C. 2929.14(C)(4) before it imposes consecutive sentences. *State v. Magwood*, 8th Dist. Cuyahoga No. 105885, 2018-Ohio-1634, ¶ 62. The court must find: consecutive terms are required to protect the public from future crime or to punish the offender, (2) consecutive terms are not disproportionate to the seriousness of the conduct and danger posed to the public, and (3) either the offender committed at least one offense while awaiting trial or sentencing, that multiple offenses were part of a course of conduct and the harm caused was so great or unusual that a single term does not adequately reflect the seriousness of the offender's conduct, or that the offender's criminal history is such that consecutive terms are necessary to protect the public. R.C. 2929.14(C)(4); *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 22, 26.

**{¶26}** Bush disputes his consecutive sentences because he took responsibility for his actions, saved resources by not going to trial, apologized, did not make excuses for his behavior, and because "most" of his offenses were low level felonies and nonviolent crimes. Regardless of the veracity of these claims, as previously discussed, there is ample evidence in the record to support consecutive sentences. Bush has a significant criminal history including cases involved heroin and fentanyl. Bush had multiple firearms and indicated he was willing to use them. We overrule this assignment of error.

**{¶27}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MELODY J. STEWART, PRESIDING JUDGE

ANITA LASTER MAYS, J., and
KATHLEEN ANN KEOUGH, J., CONCUR