[Cite as *State v. Hunt*, 2019-Ohio-1643.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 107125

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RASHAN J. HUNT

DEFENDANT-APPELLANT

---

### JUDGMENT:
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-17-618512-A

**BEFORE:** Laster Mays, J., Boyle, P.J., and Celebrezze, J.

**RELEASED AND JOURNALIZED:** May 2, 2019

-i-

**ATTORNEY FOR APPELLANT**

Mary Catherine Corrigan
Jordan Sidoti L.L.P.
50 Public Square
Terminal Tower, Suite 1900
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:    Eben McNair
          Andrew J. Santoli
Assistant County Prosecutors
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

ANITA LASTER MAYS, J.:

**{¶1}** Appellant Rashan Hunt ("Hunt") appeals his conviction and 23-year sentence for the homicide of 19-year-old Tierra Bryant ("Bryant"). After review of the record, we affirm.

**{¶2}** On March 30, 2015, Hunt and Bryant went to a hotel to engage in sexual activity. Bryant allegedly attempted to rob Hunt and sprayed him with mace. A struggle ensued that resulted in Bryant's death. Hunt picked up his cousin, purchased a large tote bag at WalMart, transported the body to Elyria where, unable to burn the body, he buried it.

**{¶3}** The mother of Hunt's children told the Federal Bureau of Investigation that Hunt returned to their home that night covered in mud and scratches. Hunt subsequently told police that he dropped Bryant off after they left the hotel.

**{¶4}** Though investigators were unable to locate the body, as the result of evidence acquired during the ongoing investigation, Hunt was arrested in California in June 2017. Hunt ultimately confessed, and Bryant's body was recovered.

**{¶5}** On July 5, 2017, Hunt was indicted for the following counts:

Count 1: Voluntary manslaughter, a felony of the first degree, R.C. 2903.03(A), with a notice of prior conviction ("NPC"), R.C. 2929.13(F)(6), and a repeated violent offender ("RVO") specification, R.C. 2941.149.

Count 2: Felonious assault, a felony of the second degree, R.C. 2903.11(A)(1), with an NPC and an RVO.

Count 3: Tampering with evidence, a felony of the third degree, R.C. 2921.12(A)(1).

Count 4: Gross abuse of a corpse, a felony of the fifth degree, R.C. 2927.01(B).

Count 5: Obstructing official business, a misdemeanor of the second degree, R.C. 2921.31(A).

Count 6: Obstructing official business, a misdemeanor of the second degree, R.C. 2921.31(A).

{¶6} At the March 12, 2018 pretrial, the state amended the indictment to nolle Count 2, and Hunt pleaded guilty to the remaining charges. On April 9, 2018, Hunt was sentenced to a total of 23 years. Hunt appeals.

## I. Assignments of Error

{¶7} Hunt proffers three assigned errors:

I. The trial court's sentence was contrary to law.

II. The record does not support the findings that consecutive sentences were appropriate.

III. The appellant received ineffective assistance of counsel.

## II. Discussion

### A. Sentencing

{¶8} We combine the first and second assigned errors for analysis. The trial court's findings are affirmed.

**{¶9}** R.C. 2953.08 sets forth the parameters of an appellate court's review of felony sentences. It includes categories of sentences that may be appealed such as consecutive sentences under R.C. 2953.08(C)(1) or a maximum sentence under R.C. 2953.08(A).

**{¶10}** The Ohio Supreme Court prescribed the current standard for appellate review of felony sentences:

> Applying the plain language of R.C. 2953.08(G)(2), we hold that an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law. In other words, an appellate court need not apply the test set out by the plurality in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.

*State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. If upon making a determination in defendant's favor, the appellate court "may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." *State v. Pluhar*, 8th Dist. Cuyahoga No. 102012, 2015-Ohio-3344, ¶ 13.

**{¶11}** For a sentence to be contrary to law, the sentence must fall "outside the statutory range" for the offense or the record must reflect a failure by the trial court to "consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12." *State v. Lee*, 8th Dist. Cuyahoga No. 104190, 2016-Ohio-8317, ¶ 9, citing *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10, citing *State v. Smith*, 8th

Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 13.

**{¶12}** There is no mandatory duty for a trial court to explain its analysis of the statutory sentences pursuant to our holding in *State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 27. A trial court is only required to indicate that the statutory factors have been considered. *Id.*, citing *State v. Wright*, 8th Dist. Cuyahoga No. 100283, 2014-Ohio-3321, ¶ 10.

**{¶13}** There is a presumption in Ohio "that prison sentences should be served concurrently unless the trial court makes the findings outlined in R.C. 2929.14(C)(4) to warrant consecutive service of the prison terms." *State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 67 (8th Dist.), citing *State v. Primm*, 8th Dist. Cuyahoga No. 103548, 2016-Ohio-5237, ¶ 64, citing *State v. Cox*, 8th Dist. Cuyahoga No. 102629, 2016-Ohio-20, ¶ 3; R.C. 2929.41(A).

**{¶14}** After a presentencing investigation and psychiatric examination regarding disposition of the case, Hunt was sentenced as follows:

| | |
|---|---|
| Count 1: | 11 years plus 8 years as a repeat violent offender; total of 19 years; |
| Count 3: | 36 months; |
| Count 4: | 12 months. |

Counts 1, 3, and 4 to run consecutive to each other.

| | |
|---|---|
| Counts 5 and 6: | 90 days in jail on each count, concurrent to each other and concurrent to Counts 1, 3, and 4. |

Journal entry No. 103349364 (Apr. 12, 2018).

**{¶15}** Hunt contends that the trial court failed to address the felony sentencing

factors in R.C. 2929.11 and the seriousness of crime and recidivism factors of R.C. 2929.12.

> R.C. 2929.11(A), governing the purposes and principles of felony sentencing, provides that a sentence imposed for a felony shall be reasonably calculated to achieve two overriding purposes of felony sentencing: (1) to protect the public from future crime by the offender and others, and (2) to punish the offender using the minimum sanctions that the court determines will accomplish those purposes. Furthermore, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).
>
> R.C. 2929.12 delineates the seriousness and recidivism factors for the sentencing court to consider in determining the most effective way to comply with the purposes and principles of sentencing set forth in R.C. 2929.11. The statute provides a non-exhaustive list of factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.

*State v. Martin*, 8th Dist. Cuyahoga No. 104354, 2017-Ohio-99, ¶ 9-10.

**{¶16}** Hunt also argues that proper consideration of the requisite factors should have resulted in a lesser sentence and challenges imposition of the maximum sentence for the voluntary manslaughter that allowed imposition of the RVO specification.

**{¶17}** The consecutive sentencing statute, R.C. 2929.14(C)(4), provides:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed

pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶18}  At the sentencing hearing, the trial court heard statements by the parents and grandparents of Bryant.  Mitigating factors proffered on Hunt's behalf included the ongoing relationship between Hunt and Bryant, the macing of Hunt by Bryant during an attempted robbery and that Hunt was choking Bryant and she fell and hit her head.

{¶19} Hunt apologized to the family and thanked the investigators that afforded him the "opportunity to come clean with them."  (Tr. 78.)  Hunt admitted that he made a "terrible mistake" and took "full responsibility for not being able to return her home. And I just want to say I'm sorry."  (Tr. 78.)

{¶20} Pertinent excerpts of the trial court's determination follow:

Voluntary manslaughter, I do think the appropriate sentence is 11 years in prison.  And as I mentioned that is mandatory time.

Tampering with evidence is a felony of the 3rd degree and related to that is offenses against human corpse. These are separate offenses, and the minimum is nine months, the maximum is 36 months for tampering with evidence.  And I'm going to impose the maximum of 36 months for tampering with evidence.  That's Count 3.  The offenses against the human corpse is a felony of the 5th degree, which is the least serious felony that we have and is somewhat surprising to me that it is a felony of the 5th degree but that is what the law states.  And the minimum of that is six

months in prison up to 12 months in prison and I'm going to impose the maximum of 12 months. I'm not going to consider the alternative of probation in either Count 3 or Count 4 given the circumstances.

Obstructing official business are minor misdemeanors, or misdemeanors of the 2nd degree I should say, and I'm going to impose the maximum of 90 days in each of those counts and run those concurrent to each other.

I do think the maximum amount is for the time periods I've mentioned for the counts I've mentioned are appropriate. I do think it's also appropriate in this situation to run these counts consecutive to each other, which means that he serves a sentence on one, he serves a sentence on the next, he serves the sentence on the next. And I think that's appropriate because of the circumstances involved in this case, and that's based on Mr. Hunt's criminal record, specifically the prior attempted murder and there is a statutory finding that I must make if I'm going to do consecutive sentences.

And I do think that consecutive sentences are necessary to protect the public from future harm or to punish the offender, Mr. Hunt, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that he poses to the public, and if the Court also finds at least one of the following, and based on his criminal conduct it demonstrates that consecutive sentences are necessary to protect the public from future harm by the offender.

I think under these circumstances it is appropriate given the totality of what's occurred in this situation.

(Tr. 81-84.)

**{¶21}** The sentences are within the statutory range. "[A] maximum sentence is not contrary to law when it is within the statutory range and the trial court considered the statutory principles and purposes of sentencing as well as the statutory seriousness and recidivism factors." *State v. Martin*, 2d Dist. Clark No. 2014-CA-69, 2015-Ohio-697, ¶ 8, citing *State v. Walker*, 2d Dist. Montgomery No. 25741, 2014-Ohio-1287, ¶ 17-19; *State v. Hayes*, 2d Dist. Clark No. 2014-CA-27, 2014-Ohio-5362, ¶ 15.

**{¶22}** The trial court enumerated the requisite findings to impose consecutive sentences under R.C. 2929.14(C). It is "clear from the record that the trial court actually made the findings required by statute." *State v. Marton*, 8th Dist. Cuyahoga No. 99253, 2013-Ohio-3430, ¶ 13, citing *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 14, 17 (8th Dist.). "[T]alismanic words" are not required. *Id.*

**{¶23}** The sentencing judgment entry also reflects that:

> The court considered all required factors of the law. The court finds that prison is consistent with the purpose of R.C. 2929.11. * * * The court imposes prison terms consecutively finding that consecutive service is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by defendant.

Journal entry No. 103349364 (Apr. 12, 2018).

**{¶24}** Hunt's RVO charge is pursuant to R.C. 2941.149(A). As required by the statute, the specification is included in the indictment.

> "Repeat violent offender" means a person about whom both of the following apply:
>
> (1) The person is being sentenced for committing or for complicity in committing any of the following:
>
> > (a) Aggravated murder, murder, any felony of the first or second degree that is an offense of violence, or an attempt to commit any of these offenses if the attempt is a felony of the first or second degree;
>
> > (b) An offense under an existing or former law of this state, another state, or the United States that is or was substantially equivalent to an offense described in division (CC)(1)(a) of this section.

(2) The person previously was convicted of or pleaded guilty to an offense described in division (CC)(1)(a) or (b) of this section.

R.C. 2929.01(CC).

**{¶25}** Hunt's 1999 convictions included attempted murder, felonious assault, and aggravated burglary. The trial court is the sole arbiter of whether an accused is a repeat violent offender. R.C. 2941.149(B).

**{¶26}** R.C. 2929.14(B)(2)(a) allows for imposition of the RVO specification where the longest prison term is imposed on the underlying conviction.

> Pursuant to R.C. 2929.14(B)(2)(a), in addition to the longest prison term authorized for the offense, the sentencing court may impose an additional definite prison term of one, two, three, four, five, six, seven, eight, nine, or ten years for the repeat violent offender specification, if all of the following criteria are met:
>
> "(i) The offender is convicted of or pleads guilty to a specification of the type described in section 2941.149 of the Revised Code that the offender is a repeat violent offender.
>
> (ii) The offense of which the offender currently is convicted or to which the offender currently pleads guilty is * * * any felony of the first degree that is an offense of violence and the court does not impose a sentence of life imprisonment without parole.
>
> (iii) The court imposes the longest prison term for the offense that is not life imprisonment without parole.
>
> (iv) The court finds that the prison terms imposed * * * are inadequate to punish the offender and protect the public from future crime, because the applicable factors under section 2929.12 of the Revised Code indicating a greater likelihood of recidivism outweigh the applicable factors under that section indicating a lesser likelihood of recidivism.
>
> (v) The court finds that the prison terms imposed * * * are demeaning to the seriousness of the offense, because one or more of the factors under section 2929.12 of the Revised Code indicating that the offender's conduct is more

serious than conduct normally constituting the offense are present, and they outweigh the applicable factors under that section indicating that the offender's conduct is less serious than conduct normally constituting the offense."

*State v. Richmond*, 8th Dist. Cuyahoga No. 101215, 2014-Ohio-4842, ¶ 14, quoting *State v. Richmond*, 8th Dist. Cuyahoga No. 98915, 2013-Ohio-2887, ¶ 20.

**{¶27}** R.C. 2929.14(B)(2)(e) dictates the trial court "shall state its findings explaining the imposed sentence" "[w]hen imposing a sentence pursuant to division (B)(2)(a) or (b) of this section."

**{¶28}** Hunt pleaded guilty to the RVO specification meeting the element of R.C. 2929.14(B)(2)(a)(I).

[A]s part of the continuing course of conduct for voluntary manslaughter, I do think it's appropriate to impose a sentence involving the repeat violent offender.

(Tr. 86.)

**{¶29}** Hunt pleaded guilty to voluntary manslaughter, a first-degree felony that is an offense of violence and he was not sentenced to life without parole, supporting R.C. 2929.14(B)(2)(a)(ii). Voluntary manslaughter "is nonetheless the most serious felony that we have." (Tr. 80.)

**{¶30}** Hunt received the maximum sentence that was not life without parole, meeting R.C. 2929.14(B)(2)(a)(iii).

And the [voluntary manslaughter] felony of the [first] degree is three years at a minimum and 11 years at a maximum. * * * Voluntary manslaughter, I do think the appropriate sentence is 11 years in prison.

(Tr. 81.)

**{¶31}** The trial court also considered recidivism pursuant to

R.C. 2929.14(B)(2)(a)(iv) and seriousness of the offense under R.C. 2929.14(B)(2)(a)(v).

First, when considering the imposition of consecutive sentences under R.C. 2929.12 factors, the court pointed out: (I) Hunt's prior attempted murder conviction; (ii) the necessity of protecting the public and punishing the offender; and (iii) that consecutive sentences were not disproportionate to the serious of the crime. (Tr. 83-84.)

**{¶32}** The trial court also noted:

And given Mr. Hunt's prior circumstances and prior serious felonies, and one not so long ago involving attempted murder, he finds himself before me, not only pleading guilty to that charge, but also with a specification called repeat violent offender and notice of prior conviction. * * *

The issue for me is what do I do with regard to the repeat violent offender. Here I think it is important to note what this stands for. The words tell you clearly what it means, but in this situation we're dealing with conduct of both parties and clearly the much more serious conduct in causing the death of Miss Bryant by Mr. Hunt. * * *

The nature of Mr. Hunt's conduct after the event leads me to believe that the repeat violent offender specification should be included as a continuing course of conduct regarding the voluntary manslaughter and which has caused, and I suspect will cause for a considerable period of time. * * *

[A]s part of the continuing course of conduct for voluntary manslaughter, I do think it's appropriate to impose a sentence involving the repeat violent offender. * * *

I think under these circumstances [the RVO] is appropriate given the totality of what's occurred in this situation.

(Tr. 80, 85-87.)

**{¶33}** We find that the trial court complied with the statute.

There are no magic words the trial court is required to recite when making RVO findings under R.C. 2929.14(B)(2)(a). *State v. Watts*, 8th Dist. Cuyahoga No. 104269, 2017-Ohio-532, ¶ 11. As long as the reviewing court can discern from the record that the trial court engaged in the correct

analysis and can determine that the record contains evidence to support the findings, the sentence on the RVO specification should be upheld. *Id*. at ¶ 12.

*State v. Buchanan*, 8th Dist. Cuyahoga No. 105706, 2018-Ohio-1086, ¶ 72.

{¶34} The first and second assignments of error are overruled.

### B.      Ineffective Assistance of Counsel

{¶35}  Hunt argues that defense counsel's performance was deficient because the communication between Hunt and counsel fell below a reasonable standard.  As a result, Hunt maintains that: (1) he did not understand the impact of the RVO specification; (2) he did not receive a true plea bargain because the second count would have merged into the first count so there was no true benefit to him; and (3) Hunt was not referred for a competency evaluation until after he entered the guilty plea in spite of evidence that Hunt was confused about the plea proceedings.

{¶36} A guilty plea must be made voluntarily, knowingly and intelligently.  *State v. Bush*, 8th Dist. Cuyahoga No. 106392, 2018-Ohio-4213, ¶ 4, citing *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 25.  "A guilty plea that lacks any of these elements is invalid."  *Id*.  An appellate court reviewed the entire record to determine whether the plea was validly entered.  *Id*., citing *State v. Armstrong*, 8th Dist. Cuyahoga No. 101961, 2015-Ohio-3343, ¶ 18.

{¶37} Hunt argues ineffectiveness due to a breakdown in communications with defense counsel:

> To prove ineffective assistance of counsel, a defendant is required to show (1) counsel's representation was both deficient, falling "below an objective

standard of reasonableness," and (2) a reasonable probability that absent this deficient performance the outcome would have been different. *Strickland v. Washington*, 466 U.S. 668, 671, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In the context of a guilty plea, a defendant must show both a deficient performance and "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty * * *." *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992), citing *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

*Id.* at ¶ 17.

**{¶38}** It appears that Hunt's claim of ineffective assistance arises due to dissatisfaction of the sentence imposed. No breakdown in communication was demonstrated that served to jeopardize Hunt's Sixth Amendment right to the effective assistance of counsel. *State v. Vaughn*, 8th Dist. Cuyahoga No. 87245, 2006-Ohio-6577, ¶ 19, citing *State v. Coleman*, 37 Ohio St.3d 286, 292, 525 N.E.2d 792 (1988); *State v. Murphy*, 91 Ohio St.3d 516, 523, 2001-Ohio-112, 747 N.E.2d 765.

**{¶39}** The trial court in this case complied with Crim.R. 11(C)(2), which requires a court to recite each of the constitutional rights the defendant is waiving and to specifically inquire whether the defendant is (1) "'making the plea voluntarily, with an understanding of the nature of the charges and the maximum penalty involved,'" (2) that the defendant "'understands the effect of his plea of guilty,'" and (3) that the defendant understands that the court "'may proceed to judgment and sentence.'" *State v. Elliott*, 8th Dist. Cuyahoga No. 102226, 2015-Ohio-3766, ¶ 12, quoting *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621. Hunt does not claim error on this issue.

**{¶40}** At the March 5, 2018 final pretrial, the trial court addressed a motion filed by Hunt to strike the RVO as unconstitutional. Hunt was advised that the motion must

be filed by defense counsel. Defense counsel said that he reviewed the motion and believed it had no foundation in law in the case. When a criminal defendant is represented by counsel and there is no indication that defense counsel joins in the defendant's pro se motion or otherwise indicates a need for the relief sought by the defendant pro se, the trial court cannot properly consider the defendant's pro se motion. *State v. Thomas*, 8th Dist. Cuyahoga No. 103759, 2016-Ohio-4961, ¶ 213, citing *State v. Wyley*, 8th Dist. Cuyahoga No. 102899, 2016-Ohio-1118, ¶ 9.

**{¶41}** The parties engaged in an in-depth discussion of the grounds for the RVO, that the RVO could only be applied if the trial court imposed a maximum sentence on the underlying manslaughter count, and that imposition of the RVO as well as the term of the RVO was within the trial court's discretion.

**{¶42}** The trial court then explained the RVO specification:

Now, Mr. Hunt, did you understand what I said? So let's assume that you plead guilty or you go to trial, either before me as the judge without a jury, or all the jury is in, all the evidence is presented, and they come back with a guilty verdict. Then we'll get some papers together about your background and history. We'll get all that information. We'll hold a sentencing hearing, usually 30 days later, and I listen to all of the information about sentencing both from your side and the prosecutor's side, and then it's time for me to decide.

As it stands now, with your situation presently in this indictment, if I were to impose the maximum amount, eleven years, and only if I apply or decided that eleven years was appropriate, at that time I can then decide to consider the RVO statute, the repeat violent offender. It's not mandatory that I impose it, but if I choose to impose it, I can do so by adding an additional time period up to ten years. So the eleven years can be twenty-one, it can be twelve, it can be thirteen. It can be all the way up to twenty-one.

(Tr. 19-20.)

**{¶43}** The court continued,

If I decide to impose a sentence less than eleven but within the range of three to eleven, let's just pick eight as a number, then I cannot apply the RVO statute. So I have to get to eleven first. That's the first decision.

Second is do I apply the RVO or not. If the answer is yes because of the circumstances of this situation, then how many additional years will it be in addition to eleven? Will it be one or all the way up to ten, which would be twenty-one.

Now, that's different for others who have repeat violent offender specifications on other cases or other indictments before them, and if you were coming before me with three RVO specifications in prior cases, then we're talking about a different situation.

Does that help you?

Hunt: Yes, sir.

(Tr. 20.) The state and defense counsel agreed on the record to the accuracy of the trial court's recitation.

**{¶44}** In spite of the events of March 5, 2018, at the March 12, 2018 hearing, Hunt shared his understanding that he was only pleading to the three-to eleven-year voluntary manslaughter charge. "I'm not copping to an RVO. I was not aware of that." (Tr. 28.) "Your Honor, I'm not willing to cop to a repeat violent offender, your Honor. I'm not willing to do that." *Id.* "[T]hat's why I put that motion to strike RVO in this case as unconstitutional." *Id.*

**{¶45}** The parties revisited the impact of the RVO for the record.

Court: So the notice of prior conviction [specification] just makes [incarceration for the first degree manslaughter count] mandatory. It doesn't add anything other than that. Do you understand that?

Hunt: Yes, your Honor.

Court: The repeat violent offender that we talked about only applies in your situation to the following:

One, I must impose the maximum amount of 11 years.
If I order something less than 11 years, then the repeat violent offender specification has no application whatsoever.

So, if I sentence you to ten years or 13 less, it's not in play. Do you understand that?

Hunt: Yes, sir.

Court: It only comes into play when I order 11 years which is the maximum amount for a felony in the first degree.
If I order 11, then I have the option of adding one to ten years in yearly increments to that if I so choose. And I would make that decision based on all the information made available to me at the time of sentencing.

So, it's basically a three to 11 standard felony in the first degree sentence with two changes, mandatory prison in place of probable prison, and only if I give you 11 years will then consider adding one, two, three all the way up 3 to ten which would be an additional time period to only the 11.

Do you understand that?

Hunt: Yes, your Honor.

Court: Isn't that what you understood when we left here before?

Hunt: No, your Honor. Sometimes it's hard for me to catch up with what you say because I'm kind of like a little slow learner, so it takes me a little while. But now that you — the way that you broke it down to me, your Honor, I fully understand.

Court: All right. Now, is that what you believed when you heard it here this morning?  When the prosecutor said with regard to Count 1 there's a notice of prior conviction and repeat violent offender specification, you immediately said, no, I'm not going to plead to   that.

Did you understand that what that meant is exactly what I said?

Hunt:  No, your Honor. That's not what I understood.

Court: But did you kind of go back to what you thought it was before?

Hunt:  Yes, your Honor.

Court: Now, do you want to talk about this to your attorney at this point?

Hunt:  No, your Honor. Now, your Honor, the way that you broke it down to me, yes, I would like to enter a plea, your Honor.

Court: Okay.   Now, there are no promises one way or the other about whether I impose the 11 or not impose the 11.  Do you understand that?

Hunt:  Yes, your Honor. I fully do.

Court: So I may; I may not, but it's going to depend upon all the facts and circumstances that I'll hear at sentencing. Do you understand?

Hunt:  Yes, your Honor.

Court: And even if I did impose the 11, that doesn't mean I will or will not

impose the additional one to ten. That's a possibility. You

understand that? In other words, I'll listen to all the evidence

and then I'll make up my mind whether or not if I order 11,

additional prison time is warranted. Do you understand that?

Hunt: Nodding in the affirmative.

Court: Let me say it again. If I hear all the information at sentencing from you, your attorney, from the State, from the victim's representatives or family members, and I decide that 11 years is appropriate, and then I hear additional information or the same information and I decide some additional time is needed or warranted under your situation and I impose anywhere from one to ten, I'll make all those decisions at sentencing. I haven't made any of these decisions at this point. Do you understand that risk?

Hunt: Yes, your Honor.

Court: And nothing I've said here today promises you one way or the other. Do you understand that?

Hunt: Yes, your Honor.

Court: And are you willing to go forward on that basis?

Hunt: Yes, your Honor. I am.

(Tr. 31-35.) Counsel for both parties' counsel expressed a belief that Hunt understood the trial court's explanation. During the colloquy, Hunt said that he was "100 percent" satisfied with the representation that he received from defense counsel. (Tr. 37.) There is nothing in the record indicating a breakdown in communication between Hunt and defense counsel.[1]

---

[1] To be successful in an ineffective assistance of counsel claim, Hunt must show "a breakdown in the attorney-client relationship of such magnitude as to jeopardize defendant's Sixth Amendment right to effective assistance of counsel." *Vaughn*, 8th Dist. Cuyahoga No. 87245, 2006-Ohio-6577, at ¶ 19, citing *Coleman*, 37 Ohio St.3d at 292, 525 N.E.2d 792; *Murphy*, 91 Ohio St.3d at 523, 2001-Ohio-112, 747 N.E.2d 765.

**{¶46}** Hunt also stated during the colloquy that he had a ninth- or tenth- grade education. Coupled with Hunt's claimed confusion regarding the RVO, Hunt offers that defense counsel should have requested a competency hearing prior to the plea entry.

> [T]he conviction of a defendant who is not competent to enter a plea violates due process of law. *See State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 155. A defendant, however, is presumed competent to enter a guilty plea in the absence of any evidence rebutting the presumption. *State v. Pigge*, 4th Dist. Ross No. 09CA3136, 2010-Ohio-6541, ¶ 28, citing R.C. 2945.37(G), and *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, 890 N.E.2d 263, ¶ 45.

*Elliott*, 8th Dist. Cuyahoga No. 102226, 2015-Ohio-3766, at ¶ 20.

**{¶47}** In addition,

> The standard for determining competence to enter a guilty plea is the same as the standard for determining competence to stand trial. *State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064, ¶ 57, citing *Godinez v. Moran*, 509 U.S. 389, 399, 113 S.Ct. 2680, 125 L.Ed.2d 321 (1993). The United States Supreme Court has defined the test for competence to stand trial (or to plead guilty) is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960).

*Id.* at ¶ 19.

**{¶48}** "'[A]n evidentiary competency hearing is constitutionally required whenever there are sufficient indicia of incompetency to call'" the defendant's competency into doubt. *Id*. at ¶ 21, quoting *State v. Were*, 94 Ohio St.3d 173, 2002-Ohio-481, 761 N.E.2d 591, paragraph two of the syllabus, following *State v. Berry*, 72 Ohio St.3d 354, 650 N.E.2d 433 (1995) (requiring a competency inquiry where the record indicates it is necessary to protect the defendant's right to a fair trial).

**{¶49}** The record reflects two in-depth explanations regarding the RVO specification as well as the terms of the proposed plea. Hunt stated that any initial confusion was clarified by the trial court's subsequent explanation. Hunt initially entered a "no contest" plea to the counts. The state indicated that Count 2 would be nolled only for a guilty plea. The trial court next explained to Hunt that Count 2 would merge with the voluntary manslaughter count for sentencing if he desired to maintain a no contest plea. Hunt elected to enter guilty pleas.

**{¶50}** In response to the trial court's inquiry about presentence testing, defense counsel suggested a mental health assessment. The trial court asked whether a competency evaluation should also be conducted. The trial court decided to move forward with both tests over the state's objections.

**{¶51}** At the sentencing, the trial court cited its review of the presentence investigation report, defense sentencing memorandum, and the mental health assessment mitigation of penalty report prepared by the court psychiatric department. Defense counsel also reviewed the report and stated that there was no reason that the sentencing should not proceed.

**{¶52}** Hunt was not prejudiced by the timing of the mental health assessment request. Hunt was still entitled to withdraw his plea under Crim.R. 32(1) "to correct a manifest injustice." *Id*. "In general, 'a presentence motion to withdraw a guilty plea should be freely and liberally granted.'" *State v. Maddox*, 2017-Ohio-8061, 98 N.E.3d 1158, ¶ 16 (8th Dist.), quoting *Xie*, 62 Ohio St.3d at 527, 584 N.E.2d 715. While the

right to withdraw was not absolute, the trial court would be required to "conduct a hearing to determine whether there is a reasonable legitimate basis for the withdrawal of the plea." *Id*. "A mere change of heart regarding a guilty plea and the possible sentence is insufficient justification for the withdrawal of a guilty plea." *Id*. at ¶ 18, citing *State v. Westley*, 8th Dist. Cuyahoga No. 97650, 2012-Ohio-3571, citing *State v. Drake*, 73 Ohio App.3d 640, 645, 598 N.E.2d 115 (8th Dist.1991).

**{¶53}** Hunt has not established that "there is a reasonable probability that, but for counsel's deficient performance, he would not have pled guilty to the offense at issue and would have insisted on going to trial." *Id*. at ¶ 21, citing *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11, citing *Xie,* 62 Ohio St.3d at 524, and *Hill,* 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203; *State v. Wright*, 8th Dist. Cuyahoga No. 98345, 2013-Ohio-936, ¶ 12.

**{¶54}** The third assigned error is without merit.

## IV. Conclusion

**{¶55}** The trial court's judgment is affirmed.

It is ordered that appellant bear the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The appellant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, P.J., CONCURS IN JUDGMENT ONLY;
FRANK D. CELEBREZZE, JR., J., CONCURS IN JUDGMENT ONLY